UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SAMUEL ALEXANDER,

                                    Plaintiff,

                                                            5:18-CV-00607

v.

                                                            (TJM/TWD)

THOMAS J. MURPHY, et al.,

                                    Defendants.
_____

APPEARANCES:

SAMUEL ALEXANDER
24144-052
Plaintiff *pro se*
Fort Dix
Federal Correctional Institution
P.O. Box 2000
Joint Base MDL, NJ 08640


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

    The Clerk has sent to the Court for initial review two complaints submitted by *pro se*

Plaintiff Samuel Alexander in this 42 U.S.C. § 1983 civil rights action against Defendants

attorney Thomas J. Murphy, Esq. ("Murphy"), and law firms Greene Hershdorfer & Sharpe

("Greene Hershdorfer"), and Pappas, Cox, Kimpel, Dodd & Levine, PC ("Pappas Cox").[1]  (Dkt.

_____

    [1]  One of Plaintiff's complaints is captioned in the Northern District of New York.  (Dkt.
No. 1.)  Named Defendants are Thomas J. Murphy, Esq., and law firm Greene Hershdorfer &
Sharpe.  *Id.*  The other, in which the factual allegations are largely the same, is captioned in the
Western District of New York and names Thomas J. Murphy, Esq., and law firms Greene
Hershdorfer & Sharpe, and Pappas, Cox, Kimpel, Dodd & Levine, PC as Defendants.  (Dkt. No.
1-1.)  In light of Plaintiff's *pro se* status, the Court will consider the complaints together as a
single pleading (referred to herein as "complaint") for purposes of initial review under 28 U.S.C.

Nos. 1 and 1-1.[2])  Also before the Court is Plaintiff's application for leave to proceed *in forma pauperis* ("IFP Application").  (Dkt. No. 2.)

## I.     PLAINTIFF'S IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1) (2006).  The Hon. Thomas J. McAvoy, Senior U.S. District Judge, initially denied Plaintiff's IFP Application as incomplete and ordered the action administratively closed in a Text Order entered on May 23, 2018.  (Dkt. No. 3.) Plaintiff was allowed thirty days to submit an Inmate Authorization Form or pay the filing fee to commence the action.  *Id.*  Plaintiff thereafter submitted an Affidavit of Poverty and Certification[3] (Dkt. No. 4) and the required Inmate Authorization Form.  (Dkt. No. 6.)

In reviewing Plaintiff's IFP Application (Dkt. No. 2), the Court notes that Plaintiff checked the "yes" box in response to question 5, which asks whether he "own[s] any real estate, stocks, bonds, securities, other financial instruments, automobiles or any other assets."  *Id.* at 2.[4] However, Plaintiff failed to respond to the instruction in question 5 to "describe the property and state its value."  *Id.*  In the Affidavit of Poverty and Certification (habeas corpus) filed by Plaintiff, he checked the "no" boxes in response to question 6 asking whether he had a checking

_____

§ 1915(e).

[2]  Docket references which do not reference a specific criminal case number refer to the docket in this action.

[3]  The Affidavit of Poverty and Certification (habeas corpus) is a United States District Court, District of New Jersey form "for use by a prisoner applying to proceed in forma pauperis in a habeas corpus" proceeding.  (Dkt. No. 4 at 1.)

[4]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

or savings account in his name and question 7 asking "[d]o you own any other assets or property." (Dkt. No. 4 at 2-3.)

Plaintiff's failure to respond fully as to assets he acknowledged having in his IFP Application (Dkt. No. 2), and his conflicting response as to assets in his Affidavit of Poverty and Certification (habeas corpus) (Dkt. No. 4), have left the Court uncertain as to whether Plaintiff is entitled to proceed *in forma pauperis* in this case.  Nonetheless, the Court will grant Plaintiff's IFP Application for the sole purpose of initial review of his complaint under 28 U.S.C. § 1915(e), and recommends that should the District Court allow Plaintiff's action to proceed, he be required to submit a complete IFP Application for consideration by the Court in determining whether he may proceed *in forma pauperis*.

## II.     LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution

should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185,

191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.    COMPLAINT

On May 1, 2016, Plaintiff Samuel Alexander retained Defendant attorney Thomas J. Murphy[5] to represent him on criminal charges set forth in an April 27, 2016, criminal complaint charging Plaintiff with violating 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846, conspiracy to possess with the intent to distribute and to distribute 100 grams or more of heroin, a Schedule I controlled substance, and 500 grams or more of cocaine, a Schedule II controlled substance. (Dkt. No. 1-2 at 1); *see also USA v. Samuel Alexander, Jr.*, No. 5:16-MJ-223 (ATB) (N.D.N.Y.), Dkt. Nos. 1 at 1; 4.[6]  Plaintiff was thereafter indicted on June 1, 2016, on charges of:

> Conspiracy to Possess with Intent to Distribute and to Distribute Heroin, 21 U.S.C. §§ 841(a)(1) and 846, *USA v. Samuel Alexander, Jr.,* No. 5:16-cr-00179-GTS (N.D.N.Y.), Dkt. No. 1 at 1-2; and
>
> Conspiracy to Possess with Intent to Distribute and to Distribute Cocaine and Cocaine Base, 21 U.S.C. §§ 841(a)(1) and 846, *USA v. Samuel Alexander, Jr.,* No. 5:16-cr-00180-

---

[5] Plaintiff's May 1, 2016, retainer agreement with Murphy indicates that Murphy was with the Greene Hershdorfer Firm at the time he was retained by Plaintiff. (Dkt. No. 1-2 at 1.) Page 1 of the criminal docket for No. 5:16-cr-00179-GTS shows that Murphy became associated with the Pappas Cox Firm at some point during his representation of Plaintiff.

[6] "[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

GTS (N.D.N.Y.), Dkt. No. 10.

Plaintiff entered a guilty plea on August 31, 2016, to violation of 21 U.S.C. § 846 with regard to both the heroin and cocaine charges and was sentenced to a term of imprisonment of 63 months in both No. 5:16-cr-00179-GTS and No. 5:16-cr-00180-GTS, to run concurrently, a term of supervised release of 3 years in No. 5:16-cr-00179-GTS and 5 years in No. 5:16-cr-00180-GTS, to run concurrently with standard and special conditions. *See* No. 5:16-cr-00179-GTS, Dkt. No. 42. Judgment was imposed on November 17, 2017. *Id*. at 133.

Plaintiff alleges in his Northern District complaint that during the course of his representation in the criminal matter, Murphy conspired with Greene, Hershdorfer & Sharpe to "deprive Plaintiff's life, liberty, and due process of law by sharing confidential emails with a known informant Daniel Redeno." (Dkt. No. 1 at 4.) Plaintiff contends that the action was undertaken intentionally and caused Plaintiff "great harm, lots of stress, mental anguish, and inflicted physical and psychological injuries in of the Legal Malpractice that forced Plaintiff into signing a plea agreement after the Honorable 'Glenn T. Suddaby' stated in open Court and on the record that Thomas Murphy (Defendant) was going to be reprimand for his wrongdoings No actions has been taking." *Id*. (unaltered text).

In his Western District complaint, Plaintiff alleges that Murphy and both Defendant law firms violated his United States and New York Constitutional and civil rights by sharing confidential information and emails pertaining to his criminal case with another inmate. (Dkt. No. 1-1 at 6.) Plaintiff claims that there have been substantive errors, administrative errors, client relation errors, intentional malicious prosecution errors, violations of professional conduct, standards, and ethics, and violations of his First, Sixth, Eighth, and Fourteenth Amendments. *Id*.

In a November 13, 2017, grievance filed against Murphy by Plaintiff on a New York

Commission of Correction Form, submitted as an exhibit with his complaint, Plaintiff accuses

Murphy of violating Plaintiff's Fourteenth Amendment right to due process in violation of 42

U.S.C. § 1983, legal malpractice, violation of Plaintiff's right to privacy, negligent infliction of

emotional distress, and mental anguish.  (Dkt. 1-2 at 2-3.)  In an undated letter to Murphy and the

two law firms, Plaintiff claimed Defendants were guilty of legal malpractice by breaching the

duty of undivided loyalty and confidentiality in connection with the alleged sharing of emails

with another inmate.  *Id*. at 5.

Plaintiff has also submitted as an exhibit to his complaint a November 13, 2017, letter to

the Hon. Glenn T. Suddaby, Chief U.S. District Judge, requesting a copy of the Court's

reprimand of Murphy for violating the rules of professional conduct and Plaintiff's right to

privacy, and claiming that the violations of his Constitutional rights and federal and state laws

tainted the entire federal court process with regard to his criminal prosecution.  *Id*. at 6-8.

## IV.    FEDERAL COURT SUBJECT MATTER JURISDICTION

Federal courts are courts of limited jurisdiction and federal subject matter jurisdiction is

available only when a "federal question" is presented (28 U.S.C. § 1331), or when the plaintiff

and defendants are of diverse citizenship and the amount in controversy exceeds $75,000 (28

U.S.C. §1332).  *See Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 136 (2d Cir. 2002). When a court

lacks subject matter jurisdiction, dismissal is mandatory.  *Arbaugh v. Y & H Corp*., 546 U.S. 500,

514 (2006).  Federal courts "have an independent obligation to determine whether subject-matter

jurisdiction exists, even in the absence of a challenge from any party."  *Id*.

A plaintiff's claims must arise "under the Constitution, laws, or treaties of the United

States" in order to invoke federal question jurisdiction. 28 U.S.C. § 1331. "Federal question

jurisdiction exists where a well-pleaded complaint establishes either that federal law creates the

cause of action or that the plaintiff's right to relief necessarily depends on resolution of a

substantial question of federal law." *Greenberg, Bear, Sterns & Co.*, 220 F.3d 22, 25 (2d Cir.

2000) (internal quotation marks omitted), *overruled on other grounds by Doscher v. Sea Prot*

*Grp. Securities, LLP,* 832 F.3d 372 (2d Cir. 2016); *see also Arbaugh*, 546 U.S. at 513 n.10 ("A

claim invoking federal-question jurisdiction . . . may be dismissed for want of subject-matter

jurisdiction if it is not colorable, *i.e.*, if it is immaterial and made solely for the purpose of

obtaining jurisdiction or is wholly insubstantial and frivolous.")

## V.     ANALYSIS

### A.     42 U.S.C. § 1983

Section 1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or causes to
> be subjected, any citizen of the United States . . . to the deprivation
> of any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege that the

challenged conduct (1) was "committed by a person acting under color of state law," and (2)

"deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws

of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v.*

*Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). "The purpose of § 1983 is to deter state actors from

using the badge of their authority to deprive individuals of their federally guaranteed rights and to

provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

It is well settled that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."[7] *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted). A plaintiff must therefore allege facts showing that a defendant was either a state actor or a private party acting under color of state law. *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002); *see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'"). Private actors have been found to engage in "state action" when they are "willful participant[s] in joint activity with the State or its agents."[8] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (citing *United States v. Price*, 383 U.S. 787, 794 (1966)).

---

[7] A plaintiff is required to allege state action on the part of the defendants in his complaint; and where he fails to do so, a court may dismiss an action under § 1915(e). *See O'Neil v. Bebee*, No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948, at *5 (N.D.N.Y. Feb. 10, 2010).

[8] The Supreme Court has identified other instances where a private party's actions may be fairly attributed to state action, including: (1) where the challenged action results from the State's exercise of coercive power; (2) when the State provides significant encouragement, either overt or covert; (3) when a nominally private entity is controlled by an agency of the State; (4) when a private entity has been delegated a public function by the State; and (5) when the private entity is entwined with governmental policies, or the government is entwined in its management or control. *See Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001). The allegations in Plaintiff's complaint do not fall within any of these other instances.

**B.     Subject Matter Jurisdiction as to Plaintiff's § 1983 Claim Against Defendants**

Plaintiff has brought this civil rights action under 42 U.S.C. § 1983 and claims that Defendants violated his rights under the First, Sixth, Eighth, and Fourteenth Amendments, along with his right to privacy, by sharing his emails with a known informant. (Dkt. Nos. 1 at 4; 1-1 at 6; 1-2 at 2-3, 6-8.) Defendant Murphy, a private attorney, was retained to represent Plaintiff in connection with the criminal charges against him. (Dkt. No. 1-2 at 1.) During the period of time he represented Plaintiff, Murphy was associated with the two law firms which have been named as Defendants solely by virtue of Murphy's association with the firms.[9]

**1.     Federal Question Jurisdiction**

Private attorneys and law firms, absent joint activity with the State or its agents, are not state actors. *See Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir. 1975); *Polk County v. Dodson*, 454 U.S. 312, 318 (1981) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983"); *Pierre v. Ingber Law Firm*, PLLC, No. 16-CV-5974 (MKB), 2017 WL 384322, at *2 (E.D.N.Y. Jan. 25, 2017)[10] ("It is well-settled that private attorneys and law firms . . . do not act under color of state law and are not state actors for purposes of Section 1983 simply by virtue of their state-issued licenses to practice law.") (quoting *Manko v. Steinhardt*, No. 11-CV-5430 (KAM) (LB), 2012

---

[9]  *See* https://www.martindale.com/organization/greene-hershdorfer-sharpe-47184/ and https://www.martindale.com/organization/pappas-cox-kimpel-dodd-levine-157694409 (last visited on July 2, 2018).

[10]  Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

WL 213715, st *4 (E.D.N.Y. Jan. 24, 2012)); *Rouse v. DeLorenzo*, No. 1:11-CV-1466

TJM/DRH, 2011 WL 9535875, at *2 (N.D.N.Y. Dec. 20, 2011) (private attorneys "do not act

under color of state law and are not state actors simply by virtue of their state-issued licenses to

practice law"); *Agron v. Douglas W. Dunham, Esq. & Assocs.,* No. 02 Civ. 10071(LAP), 2004

WL 691682, at *3 (S.D.N.Y. Mar. 31, 2004) ("It is well established that as a matter of law a

private attorney is not a state actor.").

Plaintiff's complaint and exhibits, along with filings from the record in the criminal

proceeding in which he was represented by Murphy, all discussed above, establish that Murphy

was a private attorney representing Plaintiff in a criminal matter and associated with the two

Defendant law firms during the period of representation.  Moreover, Plaintiff has failed to allege

facts suggesting that Murphy or the other Defendants conspired with any state actor to violate

Plaintiff's constitutional rights.  The Court therefore finds that Plaintiff has failed to allege a

cause of action against Defendants under § 1983 that provides the Court with subject matter

jurisdiction under 28 U.S.C. § 1331.

### 2.    Diversity Jurisdiction

"For a case to be diverse, there must be complete diversity of parties; [d]iversity is not

complete if any plaintiff is a citizen of the same state as any defendant."  *St. Paul Fire & Marine*

*Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005).  The Plea Agreement

executed by Plaintiff in No. 5:16-cr-00179, Dkt. No. 42 at 4, states that Plaintiff's home is in

Brewerton, New York.  A prisoner is presumed to be domiciled in his state of origin, not his state

of incarceration.  *See Scott v. Sonnet, Sale & Kuehne, P.A.*, 989 F.Supp. 542, 543 n.1 (S.D.N.Y.

1998) ("[p]risoners are presumed to retain the domicile they had at the time of incarceration for

diversity purposes, although they can attempt to show that they have established domicile in the state of incarceration"). A party alleging a change of domicile for diversity jurisdiction purposes has the burden of proving the "require[d] . . . intent to give up the old and take up the new [domicile], coupled with actual acquisition of a residence in the new locality, and must prove those facts by clear and convincing evidence." *Palazzo ex. rel Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir 2000) (citation and internal quotation marks omitted). Plaintiff has included no allegations in his complaint suggesting that New Jersey, where he is presently incarcerated, has become his domicile.

Plaintiff has given Syracuse, New York addresses for all three Defendants in his complaint and included no allegations suggesting that any one of the Defendants is a citizen of any state other than New York. Public records provide Syracuse addresses for both Murphy and Pappas, Cox, Kimpel, Dodd & Levine, P.C.[11] (*See* Dkt. Nos. 1 and 1-1.) Furthermore, Martindale-Hubbell identifies Greene, Hershdorfer & Sharpe as having been a Syracuse, New York law firm (*See* https://www. martindale.com/organization/greene-hershdorfer-sharpe-47184/ (last visited on July 2, 2018)).

In light of the allegations in Plaintiff's complaint, criminal court filings, and information on official New York State and Martindale-Hubbell web sites identified above, the Court concludes that Plaintiff has failed to establish a basis for diversity jurisdiction under 28 U.S.C. §

---

[11] Defendant Murphy's attorney registration information with the New York State Unified Court System includes a Syracuse, New York address. *See* iapps.courts.state.ny.us/ attorney/ (last visited on July 2, 2018). The New York Department of State Division of Corporations Entity Information gives a Syracuse, New York address for Pappas, Cox, Kimpel, Dodd & Levine, P.C. *See* https://appext20.dos.ny.gov/corp_public/CORPORATE .SEARCH_ENTITY (last visited June 28, 2018).

1332.

        3.      <u>Opportunity to Amend</u>

While mindful that *pro se* plaintiffs should generally be given an opportunity to amend their complaints, *Gomez*, 171 F.3d at 795, the Court finds that a "better pleading will not cure" the lack of subject matter jurisdiction over Plaintiff's § 1983 claims against Defendants and recommends dismissal of those claims without leave to amend. *Cuoco*, 222 F.3d at 112.

**C.    Plaintiff's State Law Claims**

Plaintiff has also attempted to allege state law claims for legal malpractice, ethical violations breaching a fiduciary duty, negligent infliction of emotional distress, malicious prosecution, and violation of the New York State Constitution against Defendants. (Dkt. Nos. 1 at 4; 1-1 at 6; 1-2 at 2-3, 6-8.) Inasmuch as the Court is recommending that Plaintiff's federal claims against Defendants be dismissed for lack of subject matter jurisdiction, it further recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, without prejudice and subject to refiling in state court and to reconsideration in the event the District Court does not accept this Court's recommendation for dismissal of Plaintiff's § 1983 claim on subject matter grounds. *See Kolari v. New York Presbyterian Hosp.*, 445 F.3d 118, 120 (2d Cir. 2006).

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. Nos. 2, 4, 6) is **GRANTED <u>solely</u>** for the purpose of this initial review; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. Nos. 1 and 1-1) be **DISMISSED IN ITS ENTIRETY** on initial review pursuant to 28 U.S.C. § 1915(3)(2)(B) as follows:

(1) **DISMISSAL** of Plaintiff's § 1983 claims against Defendants for lack of subject matter jurisdiction be **WITHOUT LEAVE TO AMEND**; and

(2) the District Court decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims, without prejudice and subject to refiling of those claims in state court; and it is hereby

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*) on Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report-recommendation.[12]   Such objections shall be filed with the Clerk of the Court.  <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**</u>.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: July 2, 2018
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[12]   If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2004 WL 691682
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Batyah Levi AGRON Plaintiff,

v.

DOUGLAS W. DUNHAM, ESQ.
& ASSOCIATES, Defendant.

No. 02 Civ.10071(LAP).
|
March 31, 2004.

Memorandum Opinion and Order

PRESKA, J.

 **\*1** This case arises out of Douglas W. Dunham, Esq.'s
("Mr. Dunham" or "Defendant") *pro bono* representation
of Plaintiff Batyah Levi Agron ("Ms. Agron" or
"Plaintiff") in her action against the Trustees of Columbia
University. Ms. Agron filed her action against Columbia
in 1988 *pro se* in the Southern District of New York (the
"Original Action"). She asserted discrimination claims
under section 504 of the Rehabilitation Act of 1973,
29 U.S.C. § 794, based upon Columbia's rejection of
her application for readmission to its School of General
Studies. Mr. Dunham became her *pro bono* attorney
in 1992. The Original Action came to trial in August
1999 before the Honorable Thomas P. Griesa, lasting
approximately one week. The jury found that Ms. Agron
was a handicapped person within the meaning of the
Rehabilitation Act, but that she was not "otherwise
qualified" for readmission to Columbia. (Declaration of
Douglas W. Dunham ("Dunham Decl."), sworn to July 3,
2003, Ex. 3 at 1.) Shortly after Judge Griesa, in September
1999, denied the motion for JNOV that Mr. Dunham
filed on behalf of Ms. Agron (Dunham Decl. Ex. 3), Mr.
Dunham withdrew from his representation of her because
he determination that there was no meritorious ground for
appeal. Ms. Agron pursued an appeal *pro se* before the
Second Circuit, which denied her motion for appointment
of counsel and found that her appeal lacked merit and
therefore dismissed it. *See Agron v. Trustees of Columbia
University,* No. 99–9407 (2d Cir. Sept. 1, 2000). Ms. Agron
subsequently filed a petition for certiorari to the United

States Supreme Court, which was also denied. *See Agron
v. Trustees of Columbia University,* 534 U.S. 932 (2001).

Ms. Agron then brought this suit *pro se* against Mr.
Dunham in August 2002. Her first complaint (which was
never served on Mr. Dunham) was dismissed *sua sponte*
by the Honorable Michael Mukasey on the grounds that
she had not properly alleged an amount in controversy
in excess of $75,000 and that she had not properly pled
a claim for legal malpractice. *See Agron v. Dunham,*
No. 02 Civ. 10071, Order at 2–4 (S.D.N.Y. Dec. 19,
2002). Plaintiff has now filed an Amended Complaint
against Mr. Dunham, dated February 19, 2003. The
Amended Complaint ("Complaint") appears to assert
claims for violation of civil rights, legal malpractice and
civil conspiracy.

By notice of motion dated July 3, 2003, Defendant moved
to dismiss the Complaint in its entirety pursuant to
Federal Rule of Civil Procedure 12(b)(6).

*Legal Standards*

I. Proceeding *Pro Se*
In addressing the Defendant's motion, the Court is
mindful that the Plaintiff is proceeding *pro se* and that her
submissions should be judged by a more lenient standard
than that accorded to " 'formal pleadings drafted by
lawyers." ' *Hughes v. Rowe,* 449 U .S. 5, 9 (1980) (per
curiam) (quoting *Haines v. Kerner,* 404 U.S. 519, 520
(1972)); *see also Burgos v. Hopkins,* 14 F.3d 787, 790 (2d
Cir.1994) ("We read [the pro se party's] supporting papers
liberally, and will interpret them to raise the strongest
arguments they suggest."); *Hanlin v. Mitchelson,* 794 F.2d
834, 838–39 (2d Cir.1986) (citing *Haines,* 404 U.S. 519,
to support the principle that pro se pleadings are given a
liberal construction). Nevertheless, proceeding *pro se* does
not altogether relieve Ms. Agron from the usual pleadings
requirements. *See Kadosh v. TRW, Inc.,* No. 91 Civ. 5080,
1994 U.S. Dist. LEXIS 17390, at \*16 (S.D.N.Y. Dec.
5, 1994) ("The work product of pro se litigants should
be generously and liberally construed, but [the pro se's]
failure to allege either specific facts or particular laws
that have been violated renders his attempt to oppose
defendants' motion ineffectual.").

II. Rule 12(b)(6) Standard

**\*2** In deciding a motion to dismiss, I must view the Complaint in the light most favorable to the Plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 237 (1974); *Yoder v. Orthomolecular Nutrition Inst., Inc .,* 751 F.2d 555, 562 (2d Cir.1985). I must accept as true the well-pleaded factual allegations stated in the Complaint, *Zinermon v. Burch,* 494 U.S. 113, 118 (1990), and draw all reasonable inferences in favor of the Plaintiff. *Scheuer,* 416 U.S. at 236; *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993). Dismissal is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957); *accord Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994). In order to avoid dismissal, plaintiff must do more than plead mere " 'conclusory allegations or legal conclusions masquerading as factual conclusions." ' *Gebhardt v. Allspect, Inc.,* 96 F.Supp.2d 331, 333 (S.D.N.Y.2000) (quoting 2 James Wm. Moore, Moore's Federal Practice P12.34[1][b] (3d ed.1997)). In construing the Complaint, documents attached to or referenced in the complaint may be considered on a motion to dismiss without converting the motion to dismiss into one for summary judgment. *See Taylor v. Vermont Dep't of Educ.,* 313 F.3d 768, 776 (2d Cir.2002) (court may look to "facts as presented within the four corners of the complaint, to documents attachments to the complaint, or to document incorporated within the complaint by reference"); *Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999) (same). Additionally, matters as to which judicial notice may be taken, such as pleadings in other lawsuits and other public records may also be considered on a motion to dismiss. *See, e.g., Rothman v. Gregor,* 220 F.3d 81, 92 (2d Cir.2000) (taking judicial notice of pleading in another lawsuit); *Clarry v. United States,* 891 F.Supp. 105, 109 (E.D.N.Y.1995) (on motion to dismiss, court "permitted to take judicial notice of matters of public record"), *aff'd,* 85 F.3d 1041 (2d Cir.1996).

III. Discussion

Although Plaintiff's Complaint is not entirely clear, Plaintiff appears to assert three causes of action—civil rights violations, legal malpractice, and civil conspiracy. Defendant moves to dismiss all three claims for failure to state a legally cognizable claim against him.

A. Civil Rights

Plaintiff makes numerous references regarding alleged violations of her civil rights. Plaintiff alleges that Defendant "interfere[d] with her Civil Rights" (Compl. at 2), "den[ied] her equal rights" (Compl. at 3), and violated "her equal protection under the Constitution" (Compl. at 4). Plaintiff also purports to involve 42 U.S.C. § 1983 (Compl. at 1).

The Court of Appeals has held that "[b]ecause the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights [have been violated] must first establish that the challenged conduct constitutes 'state action.' ' *Ciambriello v. County of Nassau,* 292 F.3d 307, 323 (2d Cir.2002) (citations omitted). Similarly, the Court of Appeals has stated that "[a] plaintiff pressing a claim of violation of his constitution rights under § 1983 is ... required to show state action." *Tancredi v. Metropolitan Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir.), *cert. denied,* 2003 U.S. LEXIS 4837 (U.S. June 23, 2003).

**\*3** It is well-established that as a matter of law a private attorney is not a state actor. *See, e.g., Rodriguez v. Weprin,* 116 F.3d 62, 65–66 (2d Cir.1997) (private attorney does not act under color of state law by virtue of his appointment by the court to represent a defendant in a state criminal proceeding); *Fine v. City of New York,* 529 F.2d 70, 74 (2d Cir.1975) (private attorney not a state actor); *Cunningham v. Fisch,* 01 Civ. 1123, 2001 U.S. Dist. LEXIS 17483, at \*11 (S.D.N.Y. Oct. 26, 2001) (" '[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983" ') (quoting *Polk County v. Davidson,* 454 U.S. 312 (1981)). The Complaint alleges that Mr. Dunham was assigned to Ms. Agron as "a Pro Bono attorney," and thus, was a private attorney and not a state actor. (Compl. at 7.) Plaintiff appears to contend that Mr. Dunham is not a private attorney because he is employed by a law firm. (Pl's Opp. at 4.) This is a misunderstanding of the law, as noted above. Accordingly, Plaintiff's claims relating to violations of her civil rights and to § 1983 do not, as a matter of law, state a cognizable claim against Mr. Dunham and must be dismissed.

B. Legal Malpractice

A legal malpractice claim in the State of New York requires the Plaintiff to demonstrate three elements: the negligence of the attorney, that the negligence was the

proximate cause of the damages sustained, and proof of actual damages. *See Mendoza v. Schlossman,* 87 A.D.2d 606, 606–07 (2d Dep't 1982). "[A] plaintiff must not only prove lack of reasonable care; plaintiff must also establish that he would have been successful in the underlying action, if his attorney had exercised due care." *Parksville Mobile Modular, Inc. v. Fabricant,* 73 A.D.2d 595, 599 (2d Dep't 1979). In other words, Plaintiff must establish that "but for" Defendant's negligence, Plaintiff would have won her case. *See Strook & Strook & Lavan v. Beltramini,* 157 A.2d 590, 591, (1st Dep't 1990) (to state a viable legal malpractice claim, plaintiff must show how she "would have prevailed in the underlying action buy for her attorney's malpractice"); *Parker, Chapin, Flattau & Klimpl v. Daelen Corp.,* 59 A.D.2d 375, 378–79 (1st Dep't 1977) ("The party must show that but for the negligence, the particular result sought by the client would or could have been achieved.").

Plaintiff makes a variety of allegations with respect to this claim. Insofar as I am able to interpret them, none establishes the essential elements of a claim for malpractice because none allege that Ms. Agron would have ultimately prevailed with regard to her claim "but for" Mr. Dunham's alleged negligence.

First, Plaintiff complains about the amended complaint drafted and filed by Mr. Dunham in Plaintiff's Original Action. (Comp. at 2–3.) The Complaint lists a variety of matters that Ms. Agron believes Mr. Dunham "was negligent" in failing to include in the amended complaint filed in the Original Action. These matters included that Mr. Dunham omitted Ms. Agron's Supplemental Security Income Division Report that listed Ms. Agron "with Blindness," that Ms. Agron "was reported as a crime victim, on campus of Columbia University," and that Ms. Agron "displayed advanced courses work" at another accredited educational institution. However, a complaint must only set forth "a short and plain statement of the claim," in accordance with Federal Rule of Civil Procedure 8(a)(2). Under Rule 8(a)(2), it was not necessary for Mr. Dunham to include in the amended complaint in the Original Action the allegations listed by Ms. Agron. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002) (under Rule 8(a)(2), "a complaint must include only 'a short and plain statement of the claim' "). Moreover, as a matter of law, the fact that the amended complaint filed in the Original Action did not list the specific matters cited by Ms. Agron had no effect on the

outcome of the trial in her case in the Original Action in August 1999, which was held after document productions, depositions and pretrial motions.

**\*4** Second, Plaintiff complains of statements made by Mr. Dunham in a memorandum of law in opposition to Defendant Columbia University's motion for summary judgment on the grounds of the statute of limitations. (Compl. at 3.) However, Plaintiff fails to allege any connection between these statements and how she would have prevailed with regard to her contract claim if Mr. Dunham had argued the statute of limitations issues for that claim differently or that Plaintiff would have ultimately prevailed at trial on her contract claim if Mr. Dunham had won a ruling that the claim was not time-barred. The fact that the trial court did not find merit in Mr. Dunham's arguments that Plaintiff's contract claim was not time-barred does not provide a basis for a malpractice claim.

Third, Plaintiff alleges that Mr. Dunham inappropriately provided in discovery a medical report, dated June 1994, to Columbia's lawyer, without her consent. That report (Dunham Decl. Ex. 14) was an expert report by a psychiatrist regarding Plaintiff's mental and emotional disabilities and was provided to Columbia as such, with Ms. Agron's knowledge and consent. *See* Dunham Decl. Ex. 15 (Interrogatory answers describing Dr. Deutsch's report and accompanying certification bearing Ms. Agron's notarized signature). Regardless, as a document attached by Plaintiff to her Complaint in this case indicates, "neither Dr. Deutsch nor his expert report were presented to the jury at the trial." (Dunham Decl. Ex. 16.) Therefore, plaintiff has failed to demonstrate any connection between the purported inappropriate disclosure and her failure to prevail at trial in the Original Action. Plaintiff's contentions with respect to Dr. Deutsch's opinion and report also fail because he never testified at trial, and his report was not used by Columbia at trial. Therefore, the report cannot be said to have influenced the trial in any way.

Fourth, the Plaintiff complains that Mr. Dunham reduced the amount of damages claimed from $40 million to in excess of $100,000. (Compl. at 3.) The amended complaint in the Original Action alleged that plaintiff "ha[d] been damaged in an amount to be determined but presently believed to be in excess of $100,000" and that Plaintiff sought a judgment against Columbia "in an amount

presently believed to be in excess of $100,000 to be determined by the proof at trial." (Dunham Decl. Ex. 2 at 6.) On its face, such language, which is commonly used in complaints in this Circuit, in no way limits the amount of damages that a plaintiff may obtain at trial. In any case, it is not alleged that the amount of damages asserted in Plaintiff's amended complaint had any effect on the outcome of the trial of Plaintiff's claims against Columbia.

Fifth, Plaintiff complains about various documents that she alleges were not presented at trial. (Compl.¶ 3–4.) However, Plaintiff does not allege that the presentation of these documents would have somehow altered the outcome of the underlying trial, nor does Plaintiff give any indication what she believes that these letters would have established had they been presented to the jury during the trial of her case against Columbia.

**\*5** Sixth, Plaintiff alleges that Mr. Dunham "did nothing to defend [her] with zeal." (Compl. at 4.) However, Plaintiff does nothing more than make this allegation in a conclusory fashion. Furthermore, after the jury rendered its verdict in the Original Action, Judge Griesa thanked the lawyers and made the following statements on the record: "And I would like to address the plaintiff's lawyers. You did all you could with this case, all that could possibly be done." (Dunham Decl. Ex. 4 at 33.) [1] Furthermore, in Plaintiff's own submission to the Second Circuit, Plaintiff stated of Mr. Dunham that he "did the best he could, under the most trying circumstances, from the Defendant, etc." (Dunham Decl. Ex. 6 at 6.) Thus, not only do Plaintiff's own record admissions contradict her contention but Plaintiff utterly fails to allege with any particularity how Mr. Dunham failed to represent her with zeal.

Seventh, Plaintiff claims that Mr. Dunham failed to oppose Columbia's introduction of a "time-barred Columbia Past Prejudice Record dated January 9, 1978." (Compl. at 4.) However, the introduction of other materials similar to the one of which Plaintiff complains were admitted by the trial court over Mr. Dunham's objections. *See* Dunham Decl. Ex. 25. Plaintiff demonstrates no basis on which Mr. Dunham might have prevailed to prevent Columbia's introduction of the evidence, nor does Plaintiff allege a sufficient causal relationship between the introduction of that evidence and the outcome of the trial.

Eighth, Ms. Agron complains that Mr. Dunham's associate took away her Hebrew Prayer book and "hid" it. As the Complaint explains, however, Columbia's lawyer had requested (and obtained) a ruling from the trial court that Ms. Agron's prayer book not be kept open in front of her at counsel table, within sight of the jury. In any case, it bears no relationship to any outcome in the Original Action. The same applies to Ms. Agron's claims that the trial was not limited to 4 hours a day, Plaintiff did not receive hearing devices, and that she was not given notes or a transcript of the proceedings. These bear no relationship to the outcome of the Original Action or the appeal thereof.

Ninth, Ms. Agron asserts that Mr. Dunham mishandled the way in which her discrimination claim should have been tried. Ms. Agron appears to contend that Mr. Dunham should have tried her discrimination claims against Columbia's claims of discrimination based upon her physical disabilities rather than based upon mental or emotional disabilities. (*See* Pl's Opp. at 11–13, 18.) However, even taken as true, these allegations fail to establish that Plaintiff could have prevailed on claims of discrimination because the jury found that Ms. Agron was not "otherwise qualified" to be a student at Columbia and therefore the jury never reached the question of whether Ms. Agron had been discriminated against. Therefore, the jury never even reached the question of whether Ms. Agron had been discriminated against.

**\*6** Tenth, Ms. Agron complains that her academic record at Bar Ilan University and Hunter College demonstrates that she was qualified. (Pl's Opp. at 17–18.) However, this is an argument that was presented to the jury in the Original Action and not a basis for a malpractice claim against her attorney. In any case, none of the purported evidence claimed by Plaintiff can be deemed in any way likely to have changed the jury's determination that Plaintiff was not otherwise qualified.

Finally, Ms. Agron contends that Mr. Dunham violated various disciplinary rules in the course of his representation of Ms. Agron. However, an alleged violation of a disciplinary rule "does not, without more, generate a cause of action." *Schwartz v. Olshan Grundman Frome & Rosezweig,* 302 A.D.2d 193, 199, 753 N.Y.S.2d 482, 487 (App.Div.2003). Here, none of the alleged violations is relevant to Plaintiff's claims of malpractice and Plaintiff's burden of pleading facts that she would

have prevailed on her claims against Columbia were it not for Mr. Dunham's alleged negligence. Therefore, because none of the allegations support the existence of a causal relationship between the alleged violations and the outcome of the trial of her claims, the allegations are insufficient to state a claim for malpractice as a matter of law.

### C. Conspiracy

Under New York law, a civil conspiracy claim must be based upon a viable intentional tort claim. *See, e.g., Alexander & Alexander of N.Y., Inc. v. Fritzen,* 68 N.Y.2d 968, 969, 503 N.E.2d 102, 103, 510 N.Y.S.2d 546, 547 (1986). As discussed, *supra,* Plaintiff's allegations are insufficient as a matter of law to establish that Mr. Dunham committed any intentional tort against her. Thus, Plaintiff fails to state a claim for civil conspiracy because no underlying tort has been properly pled. Moreover, Plaintiff's conspiracy claim fails for the additional reason that her allegations of conspiracy

are entirely conclusory and do not provide a "factual basis indicating the existence of a civil conspiracy." *See Grennwaldt v. Coughlin,* No. 93 Civ. 6551, 1995 U.S. Dist. LEXIS 5144, at *16 (S.D.N.Y. Apr. 19, 1995). Accordingly, insofar as Plaintiff attempts to assert a claim for civil conspiracy, that claim is dismissed.

### *Conclusion*

For the reasons stated above, Defendant's motion to dismiss is granted, and Plaintiff's Complaint is dismissed in its entirety with prejudice. The Clerk of the Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 691682

---

Footnotes

1    My review of the record in this action leads me to concur in Judge Griesa's evaluation of Mr. Dunham's representation. As this action unfortunately demonstrates, however, no good deed goes unpunished.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 213715
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Nella MANKO, Plaintiff,

v.

Marsha L. STEINHARDT, individually and in her
official capacity as Judge of the Supreme Court
of Kings County; fitzsimmons, individually and
in his official capacity as Clerk of the Supreme
Court of Kings County; Warren Glaser, individually
and in his official capacity a Law Secretary of the
Supreme Court of Kings County; Eileen McLoughlin,
individually and in her official capacity as Court
Reporter of the Supreme Court of Kings County;
Bruce M. Balter, individually and in his official
capacity as Judge of the Supreme court of Kings
County; Susan K. Wright, individually and in her
official capacity as Court Reporter of the Supreme
Court of Kings County; Kings County Supreme
Court of the State of New York, Administrative
Judge, individually and in her/his official capacity
as Administrative Justice of the Supreme Court
of Kings County; Kings County Clerk's Office;
Nancy T. Sunshine, individually and in her official
capacity as Clerk of the Kings County Clerk's Office;
Anna R. Schwartz, Esq., in her individual and
professional capacities; Anthony Lugara, Esq., in
his individual and professional capacities; Joshua
R. Cohen, Esq., in his individual and professional
capacities; Garson Decorato & Cohen, LLP, in its
individual and professional capacities; Garson
Gerspach Decorato & Cohen, LLP, in its individual
and professional capacities; Law Offices of David
Gabay, in its individual and professional capacities;
David A. Gabay, Esq., in his individual and
professional capacities; Bernard H. Broome, Esq.,
in his individual and professional capacities; Law
Office of Bernard H. Broom, PLLC., Defendants.

No. 11–cv–5430 (KAM)(LB).
|
Jan. 24, 2012.

**Attorneys and Law Firms**

Nella Manko, Brooklyn, NY, pro se.

**MEMORANDUM AND ORDER**

[MATSUMOTO], District Judge.

**\*1** On October 31, 2011, *pro se* plaintiff Nella Manko
filed this action [1] pursuant to [42 U.S.C. §§ 1983], [1985],
[1986] and [1988], alleging that Marsha L. Steinhardt,
individually and in her official capacity as Judge of
the Supreme Court of Kings County; Fitzsimmons, [2]
"individually and in his official capacity as Clerk of
the Supreme Court of Kings County"; Warren Glaser,
individually and in his official capacity as a Law
Secretary of the Supreme Court of Kings County; Eileen
McLoughlin, individually and in her official capacity as
Court Reporter of the Supreme Court of Kings County;
Bruce M. Balter, individually and in his official capacity
as Judge of the Supreme Court of Kings County; Susan
K. Wright, individually and in her official capacity
as Court Reporter of the Supreme Court of Kings
County; the Kings County Supreme Court of the State
of New York; a person referred to as "Administrative
Judge," individually and in her/his official capacity as
Administrative Justice of the Supreme Court of Kings
County; the Kings County Clerk's Office; Nancy T.
Sunshine, individually and in her official capacity as Clerk
of the Kings County Clerk's Office; Anna R. Schwartz,
Esq., "in her individual and professional capacities";
Anthony Lugara, Esq., "in his individual and professional
capacities"; Joshua R. Cohen, Esq., "in his individual
and professional capacities"; Garson Decorato & Cohen,
LLP, "in its individual and professional capacities";
Garson Gerspach Decorato & Cohen, LLP "in its
individual and professional capacities"; the Law Offices
of David A. Gabay, "in its individual and professional
capacities"; David A. Gabay, Esq., "in his individual and
professional capacities"; Bernard H. Broome, Esq., "in his
individual and professional capacities; and the Law Office
of Bernard H. Broome, PLLC (collectively "defendants"),
violated her constitutional rights during the course of
her state court medical malpractice action, Kings County
Supreme Court Index Number 30972/2004, and related
state court actions (collectively "State Court Actions").
(*See generally* ECF No. 1, Complaint ("Compl.").)

Plaintiff also asserts fraud and tort claims against defendants under state law. (*See id.* ¶¶ 111–134.)

Plaintiff seeks an injunction ordering Judges Steinhardt and Balter to recuse themselves in the State Court Actions; reversal, annulment and vacatur of any orders entered by Judges Steinhardt or Balter in the State Court Actions; and punitive and "actual, general, special [and] compensatory damages." (*Id.* at 36–37. [3] )

By Memorandum and Order dated November 28, 2011, this court denied plaintiff's request to proceed *in forma pauperis;* directed plaintiff to pay the $350 filing fee; and informed her that, even if she paid the fee, the action would be dismissed. (*See* ECF No. 3, Memorandum and Order dated 11/28/2011.) On December 9, 2011, plaintiff paid the filing fee.

On December 23, 2011, plaintiff moved for an order directing the United States Marshals Service to serve the summons and complaint upon defendants. (*See* ECF No. 5.) On January 5, 2012, plaintiff moved for access to the "interactive court system: 'PACER.' " (*See* ECF No. 6.) Plaintiff served process on defendants Garson Decorato & Cohen, LLP and Garson Gerspach Decorato & Cohen, LLP on January 10, 2012 (*see* ECF Nos. 7–8) and on January 23, 2012, defendants Joshua Cohen, Anna Schwartz, Anthony Lugara and Garson DeCorato & Cohen, LLP moved for a pre-motion conference in advance of their anticipated motion to dismiss. (*See* ECF No. 9.) On the same day, plaintiff filed two motions for an "emergency order to show cause for the United States Marshals Service to effect service of process" on the remaining defendants.

**\*2** For the reasons stated in the court's November 28, 2011 Order and repeated below, the court dismisses the complaint in its entirety and denies as moot the parties' outstanding motions.

### *BACKGROUND*

Plaintiff's complaint sets forth the following seven "counts," or claims, against defendants:

(1) a claim pursuant to 42 U.S.C. § 1983 ("Section 1983") against defendants Steinhardt, Fitzsimmons, Warren, Glaser, Mcloughlin, Balter, Wright, Kings County

Supreme Court of the State of New York, Administrative Judge, Kings County Clerk's Office, and Sunshine;

(2) a claim pursuant to 42 U.S.C. § 1983 against the attorneys and law firms named in the complaint;

(3) a conspiracy claim pursuant to 42 U.S.C. §§ 1983 and 1985(3) ( "Section 1985") against the attorneys and law firms named in the complaint;

(4) a claim of "fraud by omission or nondisclosure" against all defendants;

(5) a "common law conspiracy" claim against all defendants;

(6) a claim of negligent infliction of emotional distress against all defendants; and

(7) a claim of intentional infliction of emotional distress against all defendants. (*See* Compl. ¶¶ 80–134.)

### *STANDARD OF REVIEW*

In reviewing plaintiff's complaint, the court is mindful that the submissions of a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006).

Plaintiff must, however, establish that the court has subject-matter jurisdiction over the action. *See, e.g., Rene v. Citibank NA,* 32 F.Supp.2d 539, 541–42 (E.D.N.Y.1999) (dismissing *pro se* complaint for lack of subject-matter jurisdiction). "[S]ubject-matter jurisdiction ... can never be forfeited or waived" because it involves the court's power to hear a case. *United States v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002).

Notably, courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)). Consequently, "[w]here jurisdiction is lacking ... dismissal is mandatory." *Manway Constr. Co. Inc. v.*

*Housing Auth. of City of Hartford,* 711 F.2d 501, 503 (2d Cir.1983); *see also* Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Moreover, even if a plaintiff has paid the filing fee, a district court may dismiss the case, *sua sponte,* if it determines that the action is frivolous. *Fitzgerald v. First East Seventh Street Tenants Corp.,* 221 F.3d 362, 363–64 (2d Cir.2000); *see Mallard v. United States District Court,* 490 U.S. 296, 307–08, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989) (noting that "[28 U.S.C. § ] 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision"). Indeed, "district courts are especially likely to be exposed to frivolous actions and, thus, have [a] need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources." *Fitzgerald,* 221 F.3d at 364.

**\*3** A cause of action is properly deemed frivolous as a matter of law when, *inter alia,* it is "based on an indisputably meritless legal theory"—that is, when it "lacks an arguable basis in law ..., or [when] a dispositive defense clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998). The court evaluates each of plaintiff's claims in light of the foregoing standards.

### *DISCUSSION*

#### A. Claim One

#### 1. *Rooker–Feldman* Doctrine

Plaintiff's first claim (*see* Compl. ¶¶ 80–91) is barred by the doctrine of *Rooker–Feldman.* Under the *Rooker–Feldman* doctrine, cases "brought by [a] state-court loser[ ] complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments" are barred in federal courts, which lack subject-matter jurisdiction over such actions. *Exxon Mobil Corp. v. Saudi Basic Indus.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

In *Hoblock v. Albany Cnty Bd. of Elections,* the Second Circuit set forth four factors to determine whether the *Rooker–Feldman* doctrine applies: (1) plaintiff lost in state court; (2) plaintiff complains of injury caused by the state court order; (3) plaintiff seeks this court's review and rejection of the state court's process and determinations; and (4) the state court determinations in question were rendered before this action was commenced. 422 F.3d 77, 83 (2d Cir.2005).

Each of the *Hoblock* requirements are met as to the first claim which, in essence, asks this court to review and reject a state court judgment. Accordingly, because the district court lacks subject-matter jurisdiction over this claim, the court dismisses it pursuant to Fed.R.Civ.P. 12(h)(3). *See id.* at 86.

#### 2. Immunity

Moreover, even if the court had subject-matter jurisdiction over plaintiff's first claim, the claim would be dismissed because each of the named defendants in Claim One are immune from suit. First, because the claims against Judges Steinhardt, Balter and the Administrative Judge of the Supreme Court of Kings County are based solely on judicial acts performed in their judicial capacity, the claims against them are barred by the doctrine of judicial immunity. *Bliven v. Hunt,* 579 F.3d 204, 209–10 (2d Cir.2009).

Second, the claim against the Kings County Supreme Court of the State of New York Clerk's Office is barred by Eleventh Amendment immunity because it is considered an arm of the State of New York. *Gollomp v. Spitzer,* 568 F.3d 355, 366 (2d Cir.2009) (New York state Unified Court System, of which a county court is a part, is an "arm of the State," and therefore entitled to Eleventh Amendment immunity).

Furthermore, clerks of court and law secretaries, specifically defendants Sunshine, Fitzsimmons and Glaser, are immune from claims arising from their failure to perform their duties and properly manage the court calendar, and plaintiff's complaint alleges no facts regarding acts in their individual capacities. *Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997) (finding "court's inherent power to control its docket is part of its function of resolving disputes between parties" and is therefore "a function for which judges and their supporting staff are afforded absolute immunity."); *Oliva v. Heller,* 839 F.2d 37, 39 (2d Cir.1988) (law secretaries to state court judges benefit from quasi-judicial immunity). Finally,

McLoughlin and Wright, court reporters, enjoy qualified immunity. *Green v. Maraio,* 722 F.2d 1013, 1018 (2d Cir.1983). Accordingly, plaintiff's first claim is dismissible in the alternative on grounds of judicial, Eleventh Amendment, and quasi-judicial immunity.

### B. Claim Two

**\*4** The court has the authority to dismiss *sua sponte* a complaint, or portion thereof, for which a plaintiff has paid the filing fee, where the plaintiff presents no arguably meritorious issue. *See Fitzgerald,* 221 F.3d at 363.

In order to maintain a claim under Section 1983, plaintiff must allege that (1) "the conduct complained of [was] committed by a person acting under color of state law," and (2) "the conduct complained of ... deprived [her] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994).

It is well-settled that private attorneys and law firms, such as the ones named as defendants in plaintiff's complaint, do not act under color of state law and are not state actors for purposes of Section 1983 simply by virtue of their state-issued licenses to practice law. *See, e.g., Rodriguez,* 116 F.3d at 65–66 (private attorney not a state actor law by virtue of his appointment by the court to represent a defendant in a state criminal proceeding); *Fine v. City of New York,* 529 F.2d 70, 74 (2d Cir.1975) (private attorney not a state actor); *Agron v. Douglas W. Dunham, Esq. & Assocs.,* No. 02 Civ. 10071, 2004 WL 691682, at \*3 (S.D.N.Y. Mar.31, 2004) ("It is well-established that as a matter of law a private attorney is not a state actor."); *Cunningham v. Fisch,* 01 Civ. 1123, 2001 WL 1313518, at \*4 (S.D.N.Y. Oct.26, 2001) (" '[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor "under color of state law" within the meaning of [Section] 1983.' ") (quoting *Polk Cnty. v. Davidson,* 454 U.S. 312, 318, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)).

Moreover, although the complaint contains bald assertions that the attorneys and law firms named in the complaint acted under color of state law, plaintiff has provided no facts to support such claims and therefore cannot assert the state action necessary to state a viable Section 1983 claim. *See Leogrande v. Erie Ins. Co. of New York,* No. 11–CV–1320, 2011 WL 1528103, at \*4 (E.D.N.Y. Apr.20, 2011) (holding that "plaintiff has not (and cannot) allege state action and, thus, his federal

[Section 1983] claim[ ] should be dismissed sua sponte as frivolous" where court found it "apparent from the pleadings ... that plaintiff is attempting to sue private [entities] under Section 1983"). Accordingly, because the attorneys and law firms named in the complaint are private parties and are not subject to suit under Section 1983, this claim lacks any arguable legal basis and is dismissed as frivolous. *Fitzgerald,* 221 F.3d at 363; *see Storm–Eggink v. Gottfried,* 409 F. App'x 426, 427 (2d Cir.2011) ("An action is frivolous where it lacks an arguable basis either in law or in fact.") (internal quotation marks and citation omitted).

### C. Third Claim

In her third claim, plaintiff alleges that the private attorney defendants and their firms conspired to commit fraud upon plaintiff and deprived her of her constitutional rights in violation of Sections 1983 and 1985. (*See* Compl. ¶¶ 102–110.) As discussed *supra,* plaintiff's Section 1983 claim against these defendants is dismissed as frivolous because they are private parties who are not subject to suit under Section 1983.

**\*5** Nor does plaintiff's Section 1985 claim have an arguable legal basis. To state a claim for conspiracy under Section 1985, a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving any person or class of persons equal protection of the laws; and (3) an act in furtherance of conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a United States citizen. *Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 791 (2d Cir.2007).

Claims of conspiracy that are vague and provide no basis in fact must be dismissed. *Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990) (noting that plaintiff impermissibly "relie[d] on vague, prolix allegations of a conspiracy without pleading any overt acts or providing a basis in fact for his claim" and that it was "incumbent on a plaintiff to state more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of his constitutional rights" (citing *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977)). Here, because plaintiff has failed to allege facts sufficient to show the existence of any conspiracy designed to deprive her of her rights, or any overt facts in furtherance of the purported conspiracy, the court finds that plaintiff's third claim lacks an arguable legal basis and dismisses it as frivolous. *Fitzgerald,* 221 F.3d at 363; *Storm–Eggink,* 409 Fed. Appx. at 427.

## D. Plaintiff's Remaining State Law Claims

Plaintiff's remaining claims, claims four to seven, arise under state law. (*See* Compl. ¶¶ 111–34.) In light of the court's dismissal of plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over these state law claims. 28 U.S.C. § 1367(c). Plaintiff's state law claims of fraud, common law conspiracy, and intentional and negligent infliction of emotional distress, require interpretation of state law alone, and thus will be more appropriately determined in a state forum in the interests of comity and efficiency. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial ... the state claims should be dismissed as well."); *Cave v. E. Meadow Union Free Sch. Dist.,* 514 F.3d 240, 250 (2d Cir.2008) (finding dismissal of state law claims proper because it would "be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction"). Accordingly, plaintiff's state law claims are dismissed without prejudice.

The court has considered whether to permit plaintiff to amend her complaint and declines to do so because amendment would be futile. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000). Typically a court does not dismiss a case without affording a plaintiff the opportunity to be heard in opposition. But that rule does not apply where "it is unmistakably clear that ... the complaint lacks merit or is otherwise defective." *See Snider v. Melindez,* 199 F.3d 108, 113 (2d Cir.1999).

## CONCLUSION

**\*6** For the foregoing reasons, the court dismisses without prejudice plaintiff's (1) first claim for lack of subject-matter jurisdiction; (2) second and third claims because they are frivolous; and (3) remaining state law claims, over which the court declines to exercise supplemental jurisdiction. The court also denies as moot the parties' outstanding motions. Although plaintiff paid the filing fee to commence this action, the court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

Any appeal must be filed within 30 days after judgment is entered in this case. Fed. R.App. P. 4(a)(1)(A). The Clerk is respectfully requested to serve a copy of this Memorandum and Order on plaintiff and all parties not represented on ECF; note service in the docket by January 26, 2012; dismiss this action; enter judgment; and close this case.

SO ORDERED.

## All Citations

Not Reported in F.Supp.2d, 2012 WL 213715

## Footnotes

1    On October 17, 2011, two weeks before filing the instant action, plaintiff applied for leave to proceed *in forma pauperis* in a separate action in this court (the "First Action," Docket No. 11–cv–5103), which was dismissed on January 24, 2012. All six defendants named in plaintiff's complaint in the First Action appear as named defendants in plaintiff's complaint in the instant action as well.

2    Plaintiff provides only the surname for this individual.

3    These numbers refers to the page numbers assigned by the Electronic Case Filing (ECF) system.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 502948
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.

Aimee O'NEIL and M.O., Plaintiffs,

v.

Catherine BEBEE; and Oswego
City School District, Defendants.

No. 5:09-CV-1133 (GTS/DEP).
|
Feb. 10, 2010.

**Attorneys and Law Firms**

Amy O'Neil, Minetto, NY, pro se.

### DECISION and ORDER

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court in this a *pro se* civil rights
action filed by Aimee O'Neil ("Plaintiff") is her motion
to proceed *in forma pauperis,* her motion for a stay, and
her two separate letter requests. (Dkt. Nos. 1, 2, 3, 4, and
5.) For the reasons discussed below, Plaintiff's motion to
proceed *in forma pauperis* is granted; her Complaint is
*sua sponte* dismissed with prejudice due to its frivolous,
pursuant to 28 U.S.C. § 1915(e) (2)(B); her motion for a
stay and two letter requests are denied as moot; and she
is directed to show cause, within thirty (30) days of the date
of this Decision and Order, as to why the Court should not
issue an Order prohibiting her from filing any future *pro
se* actions in this Court without prior leave of the Court.

## I. PLAINTIFF'S MOTION TO PROCEED *IN
FORMA PAUPERIS*

After carefully reviewing Plaintiff's papers in support of
her motion to proceed in forma pauperis, the Court finds
that she qualifies for *in forma pauperis* status. (*See* Dkt.
No. 2.) As a result, the Court grants Plaintiff's motion to
proceed *in forma pauperis.* [1]

## II. REVIEW OF PLAINTIFF'S COMPLAINT

### A. Court's Duty to *Sua Sponte* Review Complaint

Pursuant to 28 U.S.C. § 1915(e), when a plaintiff seeks to
proceed *in forma pauperis,* "the court shall dismiss the case
at any time if the court determines that ... the action ...
(i) is frivolous or malicious; (ii) fails to state a claim on
which relief may be granted; or (iii) seeks monetary relief
against a defendant who is immune from such relief." 28
U.S.C. § 1915(e)(2) (B). [2] Thus, there is a responsibility on
the Court to determine that a complaint may be properly
maintained in the District before it may permit a plaintiff
to proceed with an action *in forma pauperis. Id.*

In determining whether an action is frivolous, the Court
must look to see whether the complaint lacks an arguable
basis in law or in fact. *Neitzke v. Williams,* 490 U.S.
319, 325 (1989). Although the Court has a duty to show
liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d
605, 606 (2d Cir.1990) (per curiam), and extreme caution
should be exercised in ordering sua sponte dismissal of a
*pro se* complaint before the adverse party has been served
and the parties have had an opportunity to respond,
*Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there
is a responsibility on the Court to determine that a claim is
not frivolous before permitting a plaintiff to proceed with
an action *in forma pauperis* in order to prevent abuses of
the process of the Court, *Harkins v. Eldredge,* 505 F.2d
802, 804 (8th Cir.1974), as well as discourage the waste of
judicial resources.

### C. Legal Standard Governing Dismissals for Failure to
State Claim

It has long been understood that a dismissal for failure to
state a claim, pursuant to Fed.R.Civ.P. 12(b)(6), may be
based on either or both of two grounds: (1) a challenge to
the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)
(2); or (2) a challenge to the legal cognizability of the claim.
*Jackson v. Onondaga County,* 549 F.Supp.2d 204, 211,
nn. 15-16 (N.D.N.Y.2008) (McAvoy, J., adopting Report-
Recommendation on *de novo* review) [citations omitted].

**\*2** With regard to the first ground, Fed.R.Civ.P. 8(a)
(2) requires that a pleading contain "a short and plain
statement of the claim *showing* that the pleader is entitled
to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By
requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires
that the pleading contain a short and plain statement that

"give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n. 17 [citations omitted]. The main purpose of this rule is to "facilitate a proper decision on the merits." *Id.* at 212, n. 18 [citations omitted]. [3]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. *Id.* at 212, n. 20 [citations omitted]. However, even this liberal notice pleading standard "has its limits." *Id.* at 212, n. 21 [citations omitted]. As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id.* at 213, n. 22 [citations omitted]; *see also Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968-69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable statement. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation [s]." *Id .* at 1965 [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* [citations omitted]. [4]

As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro*

*se* litigants). [5] It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific* facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007) [citation omitted; emphasis added). That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. [6]

**\*3** Finally, in reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. This standard is applied with even greater force where the plaintiff alleges civil rights violations and/or where the complaint is submitted *pro se.* However, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), [7] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards in Fed.R.Civ.P. 8, 10 and 12. [8] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10, and 12 are procedural rules that even *pro se* civil rights plaintiff must follow. [9] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].

### C. Summary of Plaintiff's Complaint

On October 8, 2009, Plaintiff filed her Complaint in this action. (Dkt. No. 1.) The text in the body of the Complaint is single spaced, and its pages are unnumbered. (*Id.*) In only four of the twelve pages (specifically, pages two through five) of the Complaint does Plaintiff make

any attempt at numbering paragraphs. (*Id.* at 2-5.) Even when she does so, she does not number the paragraphs consecutively. (*Id.*) Most of the paragraphs are not limited as far as practicable to a single set of circumstances, but extend to numerous sets of circumstances. (*Id.* at 4-10.) In the caption, Plaintiff names herself, as well as her daughter, M.O., as Plaintiffs in the action, and Catherine Bebee and the Oswego City Schools as the Defendants in the action. (*Id.* at 1.) However, in the body of the Complaint, Plaintiff identifies a host of other Defendants, at one point also seemingly naming M.O. as a Defendant. (*Id.* at 3-12.)

With regard to her claims, construed with the utmost of special leniency, Plaintiff has commenced this action pursuant to 42 U.S.C. § 1983, asserting several civil rights violations. (Dkt. No. 1, Attach. 1 [Civil Cover Sheet].) As summarized by Plaintiff, for example, her claims encompass "tax evasion, fraud, perjury, libel, defamation, intentional infliction of emotional distress, malpractice, negligence, invasion of privacy, violation of unlawful search and seizure, deprivation of due process, and violation of equal rights under the law ... based upon section U.S. 42 section 1983 and 1876 .... "[10] (Dkt. No. 1 at 10.)

In support of these claims, Plaintiff asserts factual allegations regarding a broad range of events occurring from the summer of 2000 to the spring of 2001, including (but not limited to) conspiracy, bribery, kidnaping, and perjury by a social worker. (*See generally* Dkt. No. 1.) More specifically, Plaintiff alleges that, between approximately August of 2000 and April of 2001, Defendant Bebee, a social worker employed by the Oswego City School District, (1) conspired with six other individuals (including members of "the Baker family," who presumably reside in or near Oswego, New York) to kidnap Plaintiff's daughter on December 22, 2000, from a children's hospital in St. Petersburg, Florida, where she was receiving orthopedic medical treatment from Dr. Sheila Love, and transport her to New York, and then (2) perpetrated a fraud on an Oswego County Court in a proceeding presided over by Judge James McCarthy in April of 2001. (*Id.*)

**\*4** Plaintiff further alleges that, in carrying out this conspiracy, Defendant Bebee committed the following acts: (1) she acted at the behest, and/or for the benefit, of Plaintiff's ex-husband (apparently named William

Wallace), who purports to be the father of Plaintiff's daughter but who has not proved his paternity; (2) she accepted a bribe of one hundred thousand dollars ($100,000) from someone in, or associated with, the Baker family, which she intended to use for the purpose of a transgender operation; (3) she invaded Plaintiff's privacy by relying on a sealed child protection report documenting the orthopedic injury to Plaintiff's daughter, and by causing Plaintiff's home to be searched illegally; (4) she not only kidnaped Plaintiff's daughter but her two other children, whom she smuggled to a third state before bringing them to New York; (5) she falsely accused Plaintiff of child abuse; (6) she helped to somehow restrict Plaintiff's parental rights in court through use of fraud, slander and due process violations; and (7) she caused Plaintiff's daughter to be placed with the Baker family in New York, against the recommendation of her daughter's pediatrician. (*Id.*)

As relief, Plaintiff demands $1,000,000.00 in compensatory and punitive damages. (*Id.* at 12.)

### D. Analysis of Complaint

As an initial matter, the Court notes that the form of Plaintiff's Complaint violates several federal and local rules. *See, e.g.,* Fed.R.Civ.P. 10(a) (requiring caption to name all defendants); Fed.R.Civ.P. 10(b) (requiring that all paragraphs be numbered sequentially, and that each paragraph be limited as far as practicable to a single set of circumstances); N.D.N.Y. L.R. 10.1(a) (requiring text in body of complaint to be double-spaced, and pages to be consecutively numbered). However, in light of the special solicitude that should ordinarily be afforded *pro se* litigants (and because these rule violations pale in comparison to Plaintiff's other pleading deficiencies, described below), the Court will overlook these rule violations. The Court does this with some hesitancy, given Plaintiff's familiarity with the pleading requirements established the local and federal rules, due to her extraordinary litigiousness (*see, infra,* Part IV of this Decision and Order).

The Court notes also that Plaintiff has filed this action not only on her own behalf, but apparently on behalf of her child, M.O., who is a minor. (*See* Dkt. No. 1, at 3; Dkt. No. 2, at 2 [listing M.O. as a dependent].) As Plaintiff previously has been repeatedly advised, M.O. may not proceed on her own behalf. *See* Fed.R.Civ.P. 17(c).[11] Nor

is a *"pro se"* non-attorney permitted to represent another person in federal court litigation. *Berrios v. New York City Housing Auth.,* 564 F.3d 130, 132-133 (2d Cir.2009). Accordingly, M.O. is dismissed as a Plaintiff in this action.

With regard to Plaintiff's claims, many of the the factual allegations throughout the Complaint are conclusory, unsubstantiated and rambling; and there are few detailed allegations clearly identifying individual(s), dates, and specific acts of the asserted misconduct forming the basis for alleged constitutional violations. Succinctly stated, the manner in which Plaintiff has set forth her claims is not short and plain, but so verbose, disjointed, vague and confusing that it is nearly impossible for the Court to assess them, and surely impossible for the Defendants to respond to them and prepare for trial. [12] However, in an extension of special solicitude to Plaintiff, and an effort to provide a more detailed explanation as to why Plaintiff's Complaint is frivolous, the Court will attempt to address the bulk of Plaintiff's claims in more detail.

### 1. Section 1983 Pleading Requirements

**\*5** Generally, to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person or entity acting under color of state law and (2) such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993); *see also Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003) (quoting *West v. Atkins,* 487 U.S. 42, 48 [1988] ).

### a. Person or Entity

State action is an essential element of any § 1983 claim. *See Gentile v. Republic Tobacco Co.,* 95-CV-1500, 1995 WL 743719, at \*2 (N.D.N.Y. Dec. 6, 1995) (Pooler, J.) (citing *Velaire v. City of Schenectady,* 862 F.Supp. 774, 776 (N.D.N.Y.1994) (McAvoy, C.J.) [citation omitted] ). It is the plaintiff's duty to allege state action on the part of the defendants named in a complaint; and a court may dismiss an action under 28 U.S.C. § 1915(e) where a plaintiff fails to plead such a nexus. *See, e.g., Jenkins v. Murphy,* 08-CV-0921, 2008 WL 4596197, at \*2 (N.D.N.Y. Oct. 14, 2008) (McCurn, J.) [collecting cases]; *Humphrey v. Rescue Mission,* 05-CV-0795, 2005 WL 1661826, at \*2 (N.D.N.Y. July 14, 2005) (Mordue, J.) [collecting cases]. [13]

Here, the action is brought against Catherine Bebee and her employer, the Oswego City Schools. Examples of Plaintiff's allegations against Bebee are as follows:

> D. Invasion of privacy-Catherine Bebee violated, denied, and /or abridged, my privacy under the colors of state laws by misusing and abusing her job position and leaving her jurisdiction. *Freeman v. Rideout,* 808 F 2d 949 (2d Cir.1986).

> 3. Negligence-because Catherine Bebee failed to verify the validity of a court order, paternity order, and her own job duties before leaving the state of New York, Catherine Bebee is also negligent because the injury to [M.O.] was unfounded and legally legead, in which Catherine Bebee, a social worker, has total access to a founded or unfounded report, and even if it was founded, it does not entitle Catherine Bebee to travel to the State of Florida as the state of Florida, in their own jurisdiction, has their own social workers, to handle their own investigations based upon findings of Dr. Sheila Love, as Sheila Love was assigned to treat patient [M.O.] Catherine Bebee is not assigned, she has no jurisdiction over [M.O.] and there needs to be a clear, definitive ruling stating Catherine Bebee has no jurisdictional authority over said child, and will never have any. It is very important to establish this factor, because the pattern of retaliation is only continuing so said child cannot attend public school....

(Dkt. No. 1, at 3-4.)

> Catherine Bebee, while under oath, under the penalties of perjury, in front of Judge James McCarthy, stated she was paid a large sum of money to travel to Florida and take said children after a careful conspiracy and several meetings to carefully plan out this act. Catherine Bebee stated she was paid an excessive $100,000.00 and was going to use this money for the purpose a transgender operation, in which she felt entitled to undertake by causing trauma and harm to my home and my family.

**\*6** (Dkt. No. 1, at 5.)

For the sake of brevity, the Court will assume that Plaintiff has alleged facts plausibly suggesting that Defendant Bebee was acting in her capacity as a state actor when she committed the acts in question. Again, the Court does this with some hesitancy, given the fact that it is not clear in what position with the school district Defendant Bebee was acting which would have conferred upon her duties regarding Plaintiff's daughter during the time in question (or even that she was employed by a municipal entity rather than some private non-profit organization). [14]

More problematic is Plaintiff's claim against the Oswego City School District. As an initial matter, to the extent that Plaintiff seeks to impose liability on the City of Oswego or the Oswego City School District, there are no factual allegations plausibly suggesting liability by either entity. Moreover, "[a]lthough municipalities are within the ambit of section 1983, municipal liability does not attach for actions undertaken by city employees under a theory of *respondeat superior." Birdsall v. City of Hartford,* 249 F.Supp.2d 163, 173 (D.Conn.2003) (citing *Monell v. New York City Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 [1978] ).

However, despite the fact that *respondeat superior* liability does not lie, a municipal entity can be held accountable for a constitutional violation which has occurred pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers ... [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels ." *Monell,* 436 U.S. at 690-91, 98 S.Ct. at 2036. Such municipal liability can be alleged in a case as this in various ways including, *inter alia,* through allegation of an officially adopted rule or widespread, informal custom plausibly suggesting "a deliberate government policy or failing to train or supervise its officers." *Bruker v. City of New York,* 337 F.Supp.2d 539, 556 (S.D.N.Y.2004) (citing and quoting *Anthony v. City of New York,* 339 F.3d 129, 140 [2d Cir.2003] ). A plaintiff may also allege such municipal liability by alleging facts plausibly suggesting that municipal officers have acquiesced in or condoned a known policy, custom or practice. *Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir.), *cert. denied, County of Schenectady v. Jeffes,* 531 U.S. 813, 121 S.Ct. 47 (2000); *Wenger v. Canastota Cent. Sch. Dist.,* 95-CV-1081, 2004 WL 726007, at *3 (N.D.N.Y. Apr. 5, 2004) (Scullin, C.J.).

Here, the Complaint is devoid of factual allegations that plausibly suggest liability against the Oswego City School District. Again, it is unclear that Defendant Bebee is employed by that entity (as opposed to being employed by Oswego County or some private non-profit organization). For example, at least one portion of the Complaint alleges that Defendant Bebee is employed by *Oswego County.* (*See* Dkt. No. 1, at 9-10.) In addition, and more importantly, there are no factual allegations plausibly suggesting that, at the time of the alleged constitutional violations, Defendant Bebee was acting pursuant to an official custom, policy, or practice of the Oswego City School District. Rather, the Complaint rather explicitly alleges that Defendant Bebee was acting outside of her authority and pursuant to employment by the Baker Family.

**\*7** For all these reasons, Plaintiff's claims against Defendant Oswego City School District are dismissed for frivolousness.

### b. Right, Privilege, or Immunity Secured by the Constitution

As to the constitutional violations asserted in Plaintiff's Complaint, references to constitutional rights and amendments are generally confined to five of the twelve pages of the Complaint. (*See generally* Dkt. No. 1, at 1-3, 5, 10.) More specifically, construed with the utmost liberality, Plaintiff's Complaint asserts that Defendant Bebee violated her following three constitutional rights: (1) her right to privacy under the Fourth Amendment; (2) her right to procedural due process under the Fourteenth Amendment; and (3) her right to equal protection of the laws under the Fourteenth Amendment. (*Id.*) In addition, Plaintiff asserts a conspiracy claim under 42 U.S.C. § 1983. (*Id.* at 2, 7-10.) [15]

With regard to Plaintiff's right-to-privacy claim under the Fourth Amendment, Plaintiff alleges that this violation occurred when the following acts occurred: (1) her home, in an unspecified city and state, was illegally searched at an unspecified time by an unspecified individual; and (2) Defendant Bebee relied on a sealed child protection report documenting the orthopedic injury to Plaintiff's daughter, in her effort to kidnap Plaintiff's daughter, transport her from Florida to New York, and/or somehow restrict Plaintiff's parental rights. (*Id.* at 1-2, 4-5.) The first act is simply too vague and speculative to plausibly

suggest a Fourth Amendment violation by Defendant Bebee. The second act, as alleged, does not give rise to a Fourth Amendment violation for three reasons: (1) it is highly questionable whether the act plausibly constitutes a violation of N.Y. Social Services Law § 422-a, which permits disclosure of a sealed child protection report by a social services commissioner under certain circumstances; (2) even if the act does plausibly constitute such a violation, a violation of state law does not, in and of itself, give rise to a violation of 42 U.S.C. § 1983, which requires a violation of either the United States Constitution or a federal statute; [16] and (3) even if the act does give rise to a constitutional violation, it is highly questionable whether Plaintiff has standing to assert that violation, because the report concerned Plaintiff's *daughter* (and Plaintiff is as a *pro se* litigant who cannot litigate the claim on behalf of her daughter).

With regard to Plaintiff's due process claim under the Fourteenth Amendment, Plaintiff alleges that Defendants failed to give any her notice and an opportunity to be heard (including an opportunity to present evidence and witnesses such as medical experts), presumably in a legal proceeding in Family Court in Oswego County to terminate Plaintiff's parental rights and/or modify her visitation rights. (*Id.* at 1-2.) This vague allegation does not allege facts plausibly suggest how much process was due because it does not allege in what type of proceeding Plaintiff was denied procedural protections (e.g., a modification of Plaintiff's visitation rights, a termination of Plaintiff's parental rights, a temporary removal of Plaintiff's daughter with the written consent of the person legally responsible for her care, a preliminary order of removal of Plaintiff's daughter after a petition is filed, a preliminary order of removal of Plaintiff's daughter before a petition is filed, or an emergency removal of Plaintiff's daughter without a court order). Indeed, based on Plaintiff's other factual allegations, it is plausible that the proceeding was permitted to be conducted *ex parte.* It is even conceivable that Plaintiff did not even have standing to participate in the proceeding.

**\*8** With regard to Plaintiff's equal protection claim under the Fourteenth Amendment, Plaintiff alleges that Defendant Bebee treated Plaintiff unequally under the law by exceeding the scope of her job duties to (1) invade Plaintiff's privacy, (2) travel to Florida to kidnap her daughter, and (3) "impact" Plaintiff by traumatizing her daughter, and depriving her daughter of medical treatment in New York State. (*Id.* at 2-5.) To assert an equal protection claim, a plaintiff must allege facts plausibly suggesting that she was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. Where the alleged classification involves a "suspect class" or "quasi-suspect class," the alleged classification is subject to "strict scrutiny" by a court. Otherwise, the alleged classification is subject to only "rational basis scrutiny." To survive such scrutiny, the alleged classification need only be "rationally related" to a "legitimate state interest."

Here, Plaintiff has not even alleged facts plausibly suggesting there has been any classification at all in this case, i.e., that she was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. (Rather, she alleges that Defendant Bebee acted differently compared to other social workers.) Moreover, even if Plaintiff had alleged facts plausibly suggesting that she was treated differently from others, she has not alleged facts plausibly suggesting that the alleged discrimination she experienced was not rationally related to a legitimate state interest (i.e., protecting Plaintiff's daughter by returning her to lawful custodians in New York State).

With regard to Plaintiff's conspiracy claim under 42 U.S.C. § 1983, she alleges that, between approximately August and December of 2000, Defendant Bebee conspired with numerous members of "the Baker family" to kidnap Plaintiff's daughter on December 22, 2000, from a children's hospital in St. Petersburg, Florida, and transport her to New York. (*Id.* at 2, 7-10.) More specifically, Plaintiff alleges that this conspiracy possessed the following characteristics: (1) it was perpetrated by seven individuals; (2) it was motivated, in part, by revenge against Plaintiff for causing the "drug bust" of one of the conspirators; (3) it was motivated also by the certain other conspirators' need for money to satisfy illegal gambling debts and to pay for a transgender operation; (4) it was preceded by witness tampering and extortion by one of the conspirators, and the making of a death threat to Plaintiff by another of the conspirators while Plaintiff was approximately eight months pregnant; (5) it culminated in the making of a bribe of $100,000 to Defendant Bebee, and a bribe of an unspecified amount to two other

conspirators; and (6) it was followed by tax evasion by at least five of the seven conspirators. (*Id.*)

**\*9** To sustain a conspiracy claim under § 42 U.S.C.1983, a plaintiff must demonstrate that a defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights ... secured by the Constitution or the federal courts." *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995) (citations and internal quotation marks omitted). Conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983. *See Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.), *cert. denied,* 464 U.S. 857 (1983).

Here, the only factual allegation contained in Plaintiff's Complaint that plausibly suggests a "meeting of the minds" between Defendant Bebee and any of the other six alleged conspirators is her receipt-at an unspecified place and time from an unidentified individuals-of $100,000 for a transgender operation. (Dkt. No. 1, at 2, 7-10.) These pleading deficiencies-which render his claim vague and conclusory-are fatal to Plaintiff's conspiracy claim. *See Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990), *cert. denied,* 499 U.S. 937 (1991); *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987); *Warren v. Fischl,* 33 F.Supp.2d 171, 177 (E.D.N.Y.1999).

For all these reasons, Plaintiff's claims against Defendant Bebee are dismissed for frivolousness. [17]

### 2. Statute of Limitations

Even when construed with the utmost of special leniency, the events giving rise to Plaintiff's claims occurred between approximately August of 2000 (when the conspirators started meeting about Plaintiff) and April of 2001 (when Defendant Bebee perpetrated a fraud on an Oswego County Court in a proceeding presided over by Judge James McCarthy in April of 2001. (Dkt. No. 1, at 3-8, 10.)

"The applicable statute of limitations for § 1983 actions arising in New York requires claims to be brought within three years ." *Pinaud v. County of Suffolk,* 52 F.3d 1138, 1156 (2d Cir.1995) [citations omitted]; *see also Connolly v. McCall,* 254 F.3d 36, 40-41 (2d Cir.2001) ("[Plaintiff's] federal constitutional claims, brought pursuant to 42 U.S.C. § 1983, are governed by New York's three-year

statute of limitations for personal injury actions ....") [citations omitted]. A claim arising under Section 1983 accrues "when the plaintiff knows or has reason to know of the harm that he seeks to redress." *Connolly v. McCall,* 254 F.3d 36, 41 (2d Cir.2001) [internal quotation marks and citation omitted], *accord, Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir.2002) [internal quotation marks and citations omitted].

Here, the three-year limitations period started running, at the latest, in April of 2001, and expired, at the latest, in April of 2004. Under the circumstances, the applicable three-year limitations period clearly bars Plaintiff's claims. The Court notes that Plaintiff, an experienced *pro se* litigant who has had similar if not identical claims barred due to untimeliness, was, when she filed this action, undoubtedly aware of this limitation period. *See, e.g., O'Neil v. Oswego County Family Court,* 07-CV-6016, Decision and Order, at 11-12 (W.D.N.Y. filed Feb. 20, 2007); *O'Neil v. Fulton Police Dept.,* 07-CV-6045, Decision and Order, at 1, 16 (W.D.N.Y. filed Feb. 28, 2007); *O'Neil v. N.Y.S. Dept. of Educ.,* UID 2007-038-526, Decision (N.Y. Ct. Cl. filed March 30, 2007).

**\*10** For this alternative reason, Plaintiff's claims against Defendants are dismissed for frivolousness.

### 3. Res Judicata and Collateral Estoppel

In the following three cases, Plaintiff's claims against Defendant Bebee and Oswego City Schools were previously dismissed on multiple grounds, including untimeliness: (1) *O'Neil v. Oswego County Family Court,* 07-CV-6016, Decision and Order, at 10-12 (W.D .N.Y. filed Feb. 20, 2007) (dismissing Plaintiff's claims against Defendants Bebee and Oswego City Schools based on untimeliness and lack of federal jurisdiction); (2) *O'Neil v. State of New York,* 07-CV-0071, Decision and Order, at 6-7 (N.D.W. Va. filed July 19, 2007) (dismissing Plaintiff's claims against Defendants Bebee and City of Oswego for lack of federal jurisdiction); and (3) *O'Neil v.. N.Y.S. Dept. of Educ.,* UID 2007-038-526, Decision (N.Y. Ct. Cl. filed March 30, 2007) (dismissing Plaintiff's claims against Defendant Bebee as untimely pursuant to, *inter alia,* New York State's three-year statute of limitations governing certain of those claims).

For this alternative reason, Plaintiff's claims against Defendants are dismissed for frivolousness.

#### 4. Nature of Dismissal

Generally, when a *pro se* action is dismissed *sua sponte,* the plaintiff should be allowed to amend his or her complaint once before their complaints are dismissed. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, such leave is not required where any amended complaint would be futile due to the substantive nature of the fatal flaws in the original complaint. [18] Here, the flaws in Plaintiff's Complaint are substantive in nature such that better pleading would not cure them. As a result, the Court finds that it would be futile to afford Plaintiff an opportunity to amend her Complaint.

### III. PLAINTIFF'S MOTION FOR STAY AND TWO LETTER REQUESTS

Plaintiff's motion to stay the proceedings is rendered moot by the Court's dismissal of Plaintiff's action with prejudice due to its frivolousness. As a result, that motion is denied as moot. In the alternative, that motion is denied as procedurally improper in that it is unsupported by an affidavit, as required by Local Rule 7.1(a). Moreover, that motion is denied on the second alternative ground that it is unsupported by a showing of cause. (Dkt. No. 3.) Specifically, Plaintiff appears to be requesting that this action be stayed "in order to criminally arrest employees required to mandate abuse and were allegedly involved in human trafficking,...." (*Id.* at 2.) Finally, as for Plaintiff's two letters requesting requested that the Clerk issue summonses for service upon Defendants, in light of the foregoing, those requests are denied as moot. (Dkt.Nos.4, 5.)

### IV. ORDER TO SHOW CAUSE

A review of Plaintiff's litigation history reveals that, in addition to filing the current action in this District, she has filed five (5) other *pro se* civil rights actions in this District: (1) *O'Neil v. Diskey,* 5:09-CV-0540, Complaint (N.D.N.Y. filed on May 7, 2009) (transferred by Suddaby, J., to the Middle District of Florida on May 20, 2009); (2) *O'Neil v. Van Auser,* 5:09-CV-0594, Complaint (N.D.N.Y. filed on May 20, 2009) (dismissed for lack of subject matter jurisdiction by Mordue, C.J., on July 21, 2009); (3) *O'Neil v. Ponzi-Flett,* 5:09-CV-0983, Complaint (N.D.N .Y. filed on Aug. 28, 2009) (dismissed for frivolousness by Suddaby, J., on February 9, 2010); (4) *O'Neil v. Ponzi,* 5:09-CV-0985, Complaint (N.D.N.Y. filed on Aug. 28, 2009) (dismissed as duplicative by Suddaby, J., on Oct.

22, 2009); and (5) *O'Neil v. Pasco County,* 5:09-CV-1175, Complaint (N.D.N.Y. filed on Oct. 21, 2009) (transferred by Suddaby, J., to the United States District Court for the Middle District of Florida on December 7, 2009).

**\*11** Moreover, a review of the Federal Judiciary's Public Access to Court Electronic Records ("PACER") reveals that Aimee O'Neil has filed some forty (40) *pro se* civil rights actions in other federal courts across the country. These actions include thirty-two (30) *pro se* civil actions filed in the Western District of New York in 2007 (eighteen of which were filed in the same week). These actions also include seven (7) *pro se* civil actions filed in the Northern District of West Virginia. These actions also include two (2) *pro se* civil actions filed in the Middle District of Florida. Finally, these actions include one (1) *pro se* civil actions filed in the Western District of Michigan.

All of Plaintiff's actions filed in the Western District of New York were *sua sponte* dismissed with prejudice as frivolous. *See O'Neil v. Fulton Police Dept.,* 07-CV-6045, Decision and Order, at 7-18 (W.D.N.Y. filed Feb. 28, 2007). Similarly, all of Plaintiff's actions filed in the Northern District of West Virginia were *sua sponte* dismissed with prejudice as frivolous. *See O'Neil v. Cornerstone Homes,* 07-CV-0069, 2007 WL 2116410, at *1-5 (N.D.W.V. July 19, 2007), *aff'd by O'Neil v. Oswego County Dept. of Soc. Servs.,* 258 F. App'x 581 (4th Cir. Dec. 17, 2007). As for Plaintiff's three remaining actions in other districts, two were *sua sponte* dismissed (the third having been filed merely a month ago). Finally, it is important to note that many of the forty-six (46) *pro se* civil actions that Plaintiff has filed have been duplicative in nature. Indeed, the current action is duplicative in nature. *See, supra,* Part II.3. of this Decision and Order.

Under such circumstances, a federal district court may impose a reasonable filing restriction on a *pro se* litigant in that particular court, pursuant to Fed.R.Civ.P. 11, 28 U.S.C. § 1651(a), and its inherent authority to control and manage its own docket so as to prevent abuse in its proceedings. For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court. *See Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access

to the judicial system.") [internal quotations and citations omitted]; *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) (where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ("[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers,* 08-CV-0330, 2008 WL 1767067, at *1 (N.D.N.Y. Apr. 16, 2008) (McCurn, J.).

**\*12**  It is worth noting that at least two federal district courts have imposed such a restriction on Plaintiff. *See O'Neil v. Fulton Police Dept.,* 07-CV-6045, Decision and Order, at 18-20 (W.D.N.Y. filed Feb. 28, 2007); *O'Neil v. Cornerstone Homes,* 07-CV-0069, 2007 WL 2116410, at *6 (N.D.W.V. July 19, 2007), aff'd by *O'Neil v. Oswego County Dept. of Soc. Servs.,* 258 F. App'x 581 (4th Cir. Dec. 17, 2007).

Because of her history of filing vexatious, harassing or duplicative lawsuits, Plaintiff is hereby warned that the Court will not tolerate the filing of frivolous actions by her in the future. As a result, she is directed to show cause, within thirty (30) days of the date of this Decision and Order, as to why this Court should not issue an Order barring her from filing any future *pro se* actions without first obtaining leave of the Court. In the event that Plaintiff fails to show such cause, she will be prohibited from filing, in this Court, any action *pro se* (that is, without counsel), without prior leave of the Court, pursuant to Fed.R.Civ.P. 11, 28 U.S.C. § 1651(a) and the Court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is *GRANTED;* and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is *sua sponte* **DISMISSED with prejudice** due to its frivolousness, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i),(ii); and it is further

**ORDERED** that Plaintiff's motion for a stay (Dkt. No. 3) is *DENIED;* and it is further

**ORDERED** that Plaintiff's requests that the Clerk issue summonses for service upon the Defendants (Dkt.Nos.4, 5) are *DENIED;* and it is further

**ORDERED** that *Plaintiff is hereby directed to* **SHOW CAUSE,** *within* **THIRTY (30) DAYS** *of the date of this Decision and Order, why this Court should not issue an Order barring her from filing any future pro se actions in this Court without first obtaining leave of the Court. In the event that Plaintiff fails to show such cause, she will be* **PROHIBITED** *from filing, in this Court, any action pro se (that is, without counsel) without prior leave of the Court, pursuant to* 28 U.S.C. § 1651(a) *and the Court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings.*

*The Court hereby certifies, for purposes of* 28 U.S.C. § 1915(a) (3), *that any appeal taken from the Court's final judgment in this action would not be taken in good faith.*

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 502948

Footnotes

1    Plaintiff should note that, although her motion to proceed *in forma pauperis* has been granted, she would still be required to pay other fees that she incurred in the action, including copying and/or witness fees, if this action were to proceed.

2    *See also Monestime v. FCC,* 09-CV-0296 (N.D.N.Y. Mar. 24, 2009) (Suddaby, J.) ("[F]ederal courts may (and have) *sua sponte* dismissed *pro se* civil rights complaints (in *in forma pauperis* proceedings) where the allegations therein are fantastic, fanciful, delusional, and/or paranoid. Indeed, this Court has done so."); *Henderson v. Clover Field,* 08-CV-0504, 2008 WL 2405705 (N.D.N.Y. June 11, 2008) (McCurn, J., adopting Report-Recommendation of Lowe, M.J.); *Mercier v. Mercier,* 07-CV-0523, 2007 WL 1582267, at *1-2 (N.D.N.Y. May 25, 2007) (Kahn, J.).

3    *See also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ( "Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F .2d 40, 42 (2d Cir.1988) ("[T]he principle function

of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

4   *See also Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) ( "[The Supreme Court] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* ).

5   *See, e.g., Jacobs v. Mostow,* 271 F. App'x 85, 87 (2d Cir. March 27, 2008) (in *pro se* action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Rule 32.1[c][1] of the Local Rules of the Second Circuit); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

6   For example, in *Erickson,* the Supreme Court held that, because the plaintiff-prisoner had alleged that, during the relevant time period, he suffered from hepatis C, he had alleged facts plausibly suggesting that he possessed a sufficiently serious medical need for purposes of an Eighth Amendment claim of inadequate medical care. *Erickson,* 127 S.Ct. at 2199-2200. Expressed differently, the Court held that such a plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication (a requirement that had been imposed by the district court). This point of law is hardly a novel one, which is presumably why the *Erickson* decision was relatively brief. Prior to the Supreme Court's decision, numerous decisions, from district courts within the Second Circuit alone, had found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000). The important thing is that, in *Erickson,* even the *pro se* plaintiff was required to allege some sort of fact.

7   *Sealed Plaintif v. Sealed Defendant # 1,* 537 F.3d 185, 191 (2d Cir.2008); *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983).

8   *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972), *cert. denied,* 411 U.S. 935, 93 S.Ct. 1911 (1973) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi,* 469 F.2d at 692) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi* within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995); *accord Wachtler v. Herkimer County,* 35 F.3d 77, 82 (2d Cir.1994).

9   *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 1984 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 2541, n. 46 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*"pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *accord, Traguth,* 710 F.2d at 95; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if her mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

10  Plaintiff is advised that there is no Section 1876 in volume 42 of the United States Code. Plaintiff also references Section 1871 in the first paragraph of her Complaint, which is unrelated to civil rights, and instead addresses international cooperation and coordination of the National Science Foundation with foreign policy. *See* 42 U.S.C. § 1871.

11  In *O'Neil v. Van Auser* and *O'Neil v. Ponzi-Flett,* Plaintiff named M.O. as a plaintiff, and in both cases she was advised that M.O. must be properly represented before commencing an action in federal court. *See O'Neil v. Van Auser,* 5:09-CV-0594, Memorandum-Decision and Order, at 1, n. 1 (N.D.N.Y. filed July 21, 2009) (Mordue, C.J.); *see also O'Neil v. Ponzi-Flett,* 5:09-CV-0983, Report-Recommendation, at 2 (N.D.N.Y. filed Sept. 9, 2009) (Lowe, M.J.).

12  *See Rest v. Weissmane,* 08-CV-0340, 2008 WL 5191733, at *5 (N.D.N.Y. Dec. 10, 2008 (Kahn, J. adopting on *de novo* review Report-Recommendation of Lowe, M.J.) (dismissing claims that "[e]ven construed with the special solicitude," were confusing, ambiguous, vague and/or otherwise unintelligible under Federal Rules of Civil Procedure 8(a)(2) and 10(b)").

13  *See also DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306, 311 (2d Cir.) (affirming dismissal of complaint where plaintiff failed to include allegations of state action in complaint), *modified on other grounds,* 520 F.2d 409 (2d Cir.1975); *Lawson*

*v. Abrams,* 84-CV-4325, 1988 WL 49244, at *4 (E.D.N.Y. May 6, 1988) (dismissing as frivolous pro se complaint where plaintiff failed to allege state action on part of defendants), *accord, Carollo-Gardner v. Diners Club,* 628 F.Supp. 1253, 1256-57 (E.D.N.Y.1986).

14    Indeed, the Court notes that Plaintiff alleges that Defendant Bebee had no professional relationship with Plaintiff's daughter. (Dkt. No. 1 at 5-6.)

15    The Court notes that Plaintiff also asserts several claims arising under New York State law, including (but not limited to) negligence, fraud, defamation, invasion of privacy, malpractice, breach of confidentiality, and intentional infliction of emotional distress. (*Id.* at 3-6, 10.) However, because a cause of action under 42 U.S.C. § 1983 may not be premised solely on a violation of state law (but requires a violation of either the United States Constitution or a federal statute), and because the Court would decline to exercise supplemental jurisdiction over any of Plaintiff's pendent state law claims, the Court need not, and will not, analyze these claims in this Decision and Order.

16    In addition, the Court notes that New York Social Service Law § 419 grants immunity to individuals, officials and institutions for making good faith reports and other related actions from any liability, civil or criminal. N.Y. Soc. Serv. Law § 419.

17    The Court notes that Plaintiff's Complaint also raises the specter of a claim under a federal statute known as the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. 104-191, 110 Stat.1936 (1996). HIPAA was enacted by Congress in order to protect against unwarranted disclosure of health records and information, authorizing the Secretary for Health and Human Services "to make final regulations concerning the privacy of individually identifiable health information." *Barnes v. Glennon,* 05-CV-0153, 2006 WL 2811821, at *5 (N.D.N.Y. Sept. 28, 2006) (*citing and quoting Nat'l Abortion Fed'n v. Ashcroft,* 03-CV-8695, 2004 WL 555701, at *2 [S.D.N.Y. Mar. 19, 2004], and 42 U.S.C. §§ 1320d through 1320d-8). Courts addressing claims similar to the claim implicitly raised by Plaintiff have determined that, in light of the availability of monetary and criminal penalties to be assessed by the Secretary of Health and Human Services or the State, *see* 42 U.S.C. § 1320d-6(b), the statute does not confer an independent private right of action. *See Barnes,* 2006 WL 2811821, at *5-6; *Cassidy v. Nicolo,* 03-CV-6603, 2005 WL 3334523, at *5-6 (W.D.N.Y. Dec. 7, 2005); *see also Pecou v. Forensic Committee Personnel,* 06-CV-3714, 2007 WL 1490450, at *2 (E.D.N.Y. Jan. 5, 2007). Courts presented with the issue also have held that, because HIPAA does not create a private right, it cannot be privately enforced via Section 1983. *Adams v. Eureka Fire Protection Dist.,* 09-CV-1315, 2009 WL 3352032, at *1 (8th Cir. Oct. 15, 2009); *see also, Auld v. Davidson,* No. 08-3110-TC, 2009 WL 1559777, at * 1 (D. Or. June 2, 2009); *Howard v. Douglas County Jail,* No. 09-3085-SAC, 2009 WL 1504733, at * 4 (D.Kan. May 28, 2009); *Frazier v. Arkansas Dept. of Corr.,* 07-CV-00184,2009 WL 856990, at *9 (E.D.Ark. Mar. 30, 2009). Accordingly, the Court finds that any alleged HIPAA violations will not support Plaintiff's Section 1983 claim, and, to the extent her Complaint is construed as asserting a cause of action under HIPAA, the claim is subject to dismissal as a matter of law.

18    *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") [citation omitted].

**End of Document**    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 384322
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Jean-Gespere Pierre, Plaintiff,
v.
The Ingber Law Firm, PLLC, Mr. Clifford
Ingber and Ms. Sharon O. Simon, Defendants.

16-CV-5974 (MKB)
|
Signed 01/25/2017

**Attorneys and Law Firms**

Jean Gespere Pierre, Brooklyn, NY, pro se.

Clifford J. Ingber, Ingber Law Firm, PLLC, White Plains, NY, for Defendants.

### MEMORANDUM & ORDER

MARGO K. BRODIE, United States District Judge

**\*1** Plaintiff Jean-Gespere Pierre, proceeding *pro se*, brings this action against Defendants The Ingber Law Firm, PLLC, Clifford Ingber and Sharon O. Simon for their role in representing Plaintiff's employer, FJC Security Services, Inc., in an employment discrimination action currently pending before this Court. Plaintiff's request to proceed *in forma pauperis* is granted pursuant to 28 U.S.C. § 1915(a). For the reasons set forth below, the Court dismisses the Complaint.

### I. Background

On September 2, 2015, Plaintiff filed a complaint, alleging employment discrimination by his employer, FJC Security Services, Inc. ("FJC") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), (the "FJC Action"). (Compl., Docket Entry No. 1.) Clifford J. Ingber and Sharon D. Simon of The Ingber Law Firm, PLLC appeared on behalf of FJC in the FJC Action, which remains pending in this Court. [1] *Pierre v. FJC Sec. Servs., Inc.*, No. 15-CV-4627 (E.D.N.Y. filed Sept. 2, 2015).

Plaintiff filed the instant action on October 26, 2016 against The Ingber Law Firm and its attorneys, alleging "false accusations in [his] complaint against Judge Steven Tiscione." (Compl. 5.) Plaintiff alleges that Defendants "are involved in a series of acts of false statements that violated" his rights secured by the First, Fifth and Fourteenth Amendments. (*Id.*) Plaintiff states that "I have requested from the Court to order a relief from law firm Ingber, PLLC, and its lawyer Clifford and its attorney Sharon D. Simon for having misused my statements in my process with FJC Security and the Judge Steven Tiscione for ex parte, while I have proof for that" (*sic*). (*Id.* at 6.) Plaintiff has not specified the type of relief he seeks.

### II. Discussion

#### a. Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976)); *see Wiley v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (holding that courts must liberally construe papers submitted by *pro se* litigants "to make the strongest arguments they suggest"); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

### b. Section 1983 claim

**\*2** Plaintiff alleges that Defendants violated his rights under the First, Fifth and Fourteenth Amendments by being "involved in a series of acts of false statements" and "mis[using] [his] statements" in his lawsuit against his employer. (Compl. 5–6.) Because a suit for damages based on allegedly unconstitutional conduct must be pursued under 42 U.S.C. § 1983, the Court has construed Plaintiff's allegations as assertions of unconstitutional state action under Section 1983. *See Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014) ("Section 1983 provides persons with a private cause of action against those acting under color of state law to recover money damages for the deprivation of any rights ... secured by the Constitution." (citation and internal quotation marks omitted)).

Section 1983 requires a plaintiff to demonstrate that the challenged conduct was "committed by a person acting under color of state law," and that the conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). The Supreme Court has held, "the under-color-of-state-law element of [Section] 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted).

Defendants are private individuals and a private law firm whose conduct cannot be fairly attributed to the State. "It is well-settled that private attorneys and law firms ... do not act under color of state law and are not state actors for purposes of Section 1983 simply by virtue of their state-issued licenses to practice law." *Manko v. Steinhardt,* No. 11-CV-5430, 2012 WL 213715, at \*4 (E.D.N.Y. Jan. 24, 2012) (collecting cases); *see Polk County v. Dodson*, 454 U.S. 312, 319 (1981) ("[T]he Courts of Appeals are agreed that a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of [Section] 1983."). Thus, Plaintiff's Section 1983 claims are dismissed for failure to state a claim upon which relief may be granted. *See Azkour v. Bowery Residents Comm., Inc.*, 646 Fed.Appx. 40, 41 (2d Cir. 2016) (affirming dismissal of a Section 1983 claim because the defendant was a private entity, not a state actor); *Grogan v. Blooming Grove Volunteer Ambulance Corps.*, 768 F.3d 259, 263–69 (2d Cir. 2014) (affirming dismissal of a Section 1983 claim because the plaintiff failed to prove that the defendant's actions were state actions); *Harrison v. New York*, 95 F. Supp. 3d 293, 306 (E.D.N.Y. 2015) (dismissing *pro se* plaintiff's Section 1983 claims for failure to plead state action).

### III. Conclusion

For the reasons set forth above, the Complaint is dismissed for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

### All Citations

Slip Copy, 2017 WL 384322

### Footnotes

1    Before the FJC Action, Plaintiff filed an employment discrimination lawsuit against a former employer, Airserv Security, which action the Court dismissed on September 21, 2016 (the "Airserv Action"). *Pierre v. Airserv Sec.*, No. 14-CV-5915, 2016 WL 5136256 (E.D.N.Y. Sept. 21, 2016). After the dismissal of the Airserv Action, on August 3, 2016, Plaintiff commenced a separate civil action against the lawyer and law firm representing Airserv Security, which action the Court dismissed for failure to state a claim. *Pierre v. Law Firm Littler Mendelson, P.C.*, No. 16-CV-04364, 2016 WL 6426373, at \*2 (E.D.N.Y. Oct. 28, 2016).

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.    2

2011 WL 9535875
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Shelia ROUSE, Plaintiff,
v.
Thomas DE LORENZO, Defendant.

No. 1:11–CV–1466 (TJM/DRH).
|
Dec. 20, 2011.

**Attorneys and Law Firms**

Shelia Rouse, Albany, NY, pro se.

### REPORT–RECOMMENDATION AND ORDER

DAVID R. HOMER, United States Magistrate Judge.

#### I. Background.

**\*1** Presently before this Court is an application to proceed in forma pauperis and a civil rights complaint filed by Shelia Rouse ("Rouse" or "plaintiff"). Rouse has not paid any fee relating to this action. Dkt. Nos. 1, 2.

Rouse brings this action alleging the named defendant, an attorney, illegally cashed a check given to him by plaintiff for purposes of posting bail. Rouse contends defendant did not provide any service on her behalf and seeks defendant reimburse her the amount of the check. For a complete statement of Rouse's claims, reference is made to the complaint. Dkt. No. 1.

#### II. Initial Screening

The Court has reviewed Rouse' in forma pauperis application. See Dkt. No. 2. Because Rouse sets forth sufficient economic need, the Court finds that Rouse qualifies to proceed in forma pauperis.

Having found that Rouse meets the financial criteria for commencing this case in forma pauperis, the Court must now consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e) and

1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) ... the court shall dismiss the case at any time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis. See id.

Plaintiff brought this action under 42 U.S.C. § 1983 ("Section 1983"). Section 1983 establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. German v. Fed. Home Loan Mortg. Corp., 885 F.Supp. 537, 573 (S.D.N.Y.1995) (citing Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted). In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law. Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Cir.1992); see also Rounseville v. Zahl, 13 F.3d 625, 628 (2d Cir.1994) (noting state action requirement under § 1983). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' " United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 941 F.2d 1292, 1295–96 (2d Cir.1991) (citing Blum v. Yaretsky, 457 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)). A private defendant may be held liable only as "a willing participant in joint activity with the State or its agents." Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (quoting United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)). Claims under § 1983 can be brought against private entities by "showing that a person acting under color of state law ... collaborated or conspired with a private person ... to deprive the plaintiff of a constitutional right." Fries v. Barnes, 618 F.2d 988, 990 (2d Cir.1980) (citing Adickes, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142).

### III. **Discussion**

 **\*2**  Defendant Thomas DeLorenzo is a private attorney who was apparently retained by Rouse for the purpose of posting bail for Rouse. Rouse has not alleged that defendant DeLorenzo acted under color of state law or conspired with the State or any of its agents to violate Rouse's constitutional rights.

Furthermore, it is well-settled that private attorneys do not act under color of state law and are not state actors simply by virtue of their state-issued licenses to practice law. *See, e.g., Rodriguez v. Weprin,* 116 F.3d 62, 65–66 (2d Cir.1997) (private attorney not a state actor by virtue of his appointment by the court to represent a defendant in a state criminal proceeding); *Fine v. City of New York,* 529 F.2d 70, 74 (2d Cir.1975) (private attorney not a state actor); *Agron v. Douglas W. Dunham, Esq. & Assocs.,* No. 02 Civ. 10071, 2004 WL 691682, at \*3 (S.D.N.Y.Mar.31, 2004) ("It is well-established that as a matter of law a private attorney is not a state actor."); *Cunningham v. Fisch,* 01 Civ. 1123, 2001 U.S. Dist. LEXIS 17483, at \*11 (S.D.N.Y. Oct. 26, 2001) (" '[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of state law' within the meaning of § 1983." ') (*quoting Polk County v. Davidson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)). *Sullivan v. Stein,* No. Civ. 3:03 CV 1203, 2004 WL 1179351, at \*10 (D.Conn. May 21, 2004).

Accordingly, defendant DeLorenzo should be dismissed from this action and the complaint dismissed.

### III. Conclusion

Accordingly, for the above-stated reasons, it is hereby

**RECOMMENDED** that Rouse's complaint be **DISMISSED;** and it is further

**ORDERED** that although Rouse qualifies to proceed *in forma pauperis,* her application is **DENIED** as moot in light of the Court's recommendation that this action be dismissed; and it is further

**ORDERED** that the Clerk serve plaintiff with a copy of this report-recommendation by regular mail, and certified mail, return receipt requested.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D.L.R. 72 .1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2011 WL 9535875

---

© 2018 Thomson Reuters. No claim to original U.S. Government Works.